**UNITED STATES** of America ex rel. Grigorios **STELLAS,** Relator-Appellant,

v.

**P. A. ESPERDY,** as District Director of the Immigration Service for the District of New York, or such person, if any, who may have said Grigorios Stellas in custody, Respondent-Appellee.

No. 396, Docket 30356.

United States Court of Appeals Second Circuit.

Argued June 1, 1966.

Decided Aug. 30, 1966.

Anna M. Pappas, New York City (Pappas & Pappas, New York City, on the brief), for appellant.

Francis J. Lyons, Sp. Asst. U. S. Atty. Southern District of New York (Robert M. Morgenthau, U. S. Atty., and James G. Greilsheimer, Sp. Asst. U. S. Atty. Southern District of New York, on the brief), for appellee.

Before MOORE, SMITH and KAUFMAN, Circuit Judges.

SMITH, Circuit Judge:

Grigorios Stellas appeals from an order of the United States District Court for the Southern District of New York, Frederick van Pelt Bryan, Judge, dismissing his application for a writ of habeas corpus. Stellas, an alien, native of Greece, arrived at New York as a crewman on the M/T Andreas on June 23, 1961. He complained of tonsilitis, and was paroled into this country for medical treatment for one month. At the same time, his crewman's landing permit, un-

der which he had previously made a number of landings, was revoked. At the expiration of the parole, he failed to return to his vessel or to the Immigration and Naturalization Service, and remained at large until July 11, 1963, when he was found by the INS, and his parole was revoked. Of course, by then his parole had long since expired. By that time, however, he had married a United States citizen, and had one daughter, with another child expected. The District Director reparoled Stellas so that he could remain with his wife in her condition. Parole was to continue until 30 days after the termination of her pregnancy.

Mrs. Stellas promptly filed a petition with the INS to have Stellas accorded non-quota immigrant status.[1] The petition was approved by the District Director on August 4, 1963. In accordance with his plan to perfect his status, Stellas indicated that he would go to Caracas, Venezuela, to file for an immigrant visa. Allegedly for financial reasons, however, he was never able to do so. Parole was periodically extended, the last time until March 16, 1966, for completion of the immigrant visa.

But on November 10, 1965, Mrs. Stellas expressed a wish that the petition be withdrawn, alleging that she was in fear of bodily harm, and asking that her husband be deported. She signed a request for withdrawal of the petition. By applicable regulation, 8 C.F.R. § 206.1(b)(1), approval of the visa petition was automatically revoked. Stellas' parole was then revoked, by notice to him, and only the issuance of an order of the District Court prevented his summary deportation.

On December 6, 1965, after an apparent reconciliation, Mrs. Stellas filed a new visa petition to accord Stellas immediate relative status,[2] but at the time indicating that she was acting under pressure from her husband's relatives and friends. After an investigation, Mrs. Stellas indicated she wished to withdraw the petition, and did so December 15.[3] The District Court denied the writ and Stellas appeals. We find no error and affirm.

■ Although Stellas originally could have come ashore on his crewman's landing permit, he actually was paroled into this country. § 212(d)(5) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182(d)(5). Accordingly, both as a matter of statutory construction, Kaplan v. Tod, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585 (1925), Leng May Ma v. Barber, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958), Licea-Gomez v. Pilliod, 193 F.Supp. 577 (N.D. Ill.1960), and as a matter of the scope of constitutional guarantees, Wong Hing Fun v. Esperdy, 335 F.2d 656 (2d Cir. 1964), cert. denied sub nom. Ng Sui Sang v. Esperdy, 379 U.S. 970, 85 S.Ct. 667, 13 L.Ed.2d 562 (1965), Ahrens v. Rojas, 292 F.2d 406 (5th Cir. 1961), Stellas may be deported without a hearing. See also United States ex rel. Lam Hai Cheung v. Esperdy, 345 F.2d 989 (2d Cir. 1965). Since he was paroled into the country, it is as if he were "stopped at the limit of our jurisdiction," United States v. Ju Toy, 198 U.S. 253, 263, 25 S.Ct. 644, 646, 49 L.Ed. 1040 (1905), and it is the same "as if [he] never had been removed from the steamship," Nishimura Ekiu v. United States, 142 U.S. 651, 661, 12 S.Ct. 336, 339, 35 L.Ed. 1146 (1892). As the Court recognized in Leng May Ma, supra, there is no difference between parole and detention ashore.

■ Accordingly, Stellas is being excluded, not expelled, and no hearing is necessary, since he does not make a claim of citizenship. Any procedure authorized by Congress for the exclusion of aliens is due process, United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317 (1950), a point

---

1. § 205(b) of the Act, now repealed, and replaced by § 4 of the Immigration Act of 1965, 8 U.S.C. § 1154.

2. 8 U.S.C. § 1154.

3. Stellas asserts that his wife has engaged in extramarital misconduct and finds his presence in this country inconvenient.

on which the Court was unanimous. Exclusion raises no due process question. Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953).

█ Petitioner suggests that it was improper for the INS to revoke his landing permit and instead to parole him, and he claims that if he had entered under his landing permit, he would have had the protection of full-scale deportation procedure, upon a revocation of the permit, or upon his failure to return to the ship, and could not be summarily deported. This misreads the statute. Sec. 252(b) of the Act, 8 U.S.C. § 1282(b), provides that plenary deportation procedure, that required by § 242 of the Act, 8 U.S.C. § 1252, is not required in deporting an alien on revocation of his permit. Nor does the Constitution compel a different result. Appellant's permit, like all others, states, "By accepting this conditional permit to land the holder agrees to all the conditions incident to the issuance thereof, and to deportation * * * in accordance with the provisions of § 252(b) * * *." Had appellant entered on a permit, he would have waived any Constitutional right to full-scale deportation proceedings. Compare United States ex rel. Szlajmer v. Esperdy, 188 F.Supp. 491 (S.D.N.Y.1960).

██ In any case, Stellas was here in November and December, 1965, on reparole. When apprehended on July 11, 1963, his permission to land would have long expired, as all are limited by statute, § 252(a) (2) of the Act, 8 U.S.C. § 1282 (a) (2) to 29 days. He was then obviously deportable. Having subsequently been reparoled, and his wife having then filed her petition, occasioning his parole on yet a third ground, Stellas is in no position to complain. And whether or not his initial parole, for medical reasons, was proper, his reparole was proper.

Moreover, while the "permanent type landing permit," 8 C.F.R. § 252.4(a), of which Stellas was allegedly possessed, is revocable under the Regulation for wilful violation of its terms, or when its holder is ineligible for it, or inadmissible, these categories of revocability are not intended to be exclusive. Since under the statute, § 252 of the Act, 8 U.S.C. § 1282, a permit is given each time the crewman arrives, and it is explicitly within the discretion of the immigration officer to grant a permit, he has discretion to revoke the "permanent type landing permit" on any entry of the crewman.

█ The sole meritorious ground for appeal is the claim that the procedure followed by the INS is not authorized by the Act, and is an abuse of discretion, in that the automatic revocation of a visa petition upon its withdrawal by the citizen spouse, 8 C.F.R. § 206.1(b) (1), conflicts with the statute, § 206 of the Act, 8 U.S.C. § 1155, which provides that the Attorney General may, at any time, "for what he deems to be good and sufficient cause" revoke a visa petition.[4] We read the statute as affording the Attorney General the usual measure of administrative discretion.

██ The Regulation does not create a rule at odds with the statute. Sec. 206 does not prevent the Attorney General from formulating rules which irrevocably govern the question of revocation of visa petitions. That question, as we have said, is a matter confined to his discretion. But the Attorney General may govern the exercise of his discretion by written or unwritten rules; indeed it would be remarkable if he did not. Any such decision is an application of facts to principles. All this regulation does is provide a substitute for the exercise of discretion on a case by case basis. But there has been an exercise of discretion; in effect, the Attorney General has announced that he deems it good and suf-

4. The precise question before the court is the effectiveness of the revocation of *parole*, not of the visa petition. The INS has not suggested that even if automatic revocation of the petition was proper, the revocation of parole was proper as an independent exercise of discretion. In fact it would appear that revocation of parole followed automatically from the revocation of the petition.

ficient cause, in every case, to revoke on withdrawal. We know of no rule which requires a case by case approach; the Attorney General certainly may proceed by regulation. Contrast United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

In Mastrapasqua v. Shaughnessy, 180 F.2d 999, 1002 (2d Cir. 1950) this court stated that a refusal to exercise discretion occurs

> when an official sets up a class of cases as to which he refuses ever to exercise any [further] discretion, one way or the other, if that class is not rationally differentiated from other cases, not within that class, where he uses his discretion case by case.

The regulation here, however, does not create an arbitrary or capricious class of cases. In *Mastrapasqua,* the class was set up by the Attorney General making a ruling in a single case. It follows from the portion of the opinion quoted that at least if the class created is susceptible of rational differentiation, then there is an exercise of discretion in following the rule.

And in United States ex rel. Knauff v. McGrath, 181 F.2d 839 (2d Cir. 1950), vacated as moot, 340 U.S. 940, 71 S.Ct. 504, 95 L.Ed. 678 (1951), the court came to a similar conclusion. The statute there provided for deportation "unless in the opinion of the Attorney General immediate deportation is not practicable or proper." The INS admitted that when a private bill was introduced in Congress to avoid the deportation of an alien, it was the invariable practice of the INS to stop all further efforts to deport. In the case of Mrs. Knauff, this practice was not followed. The court stated that the "invariable practice" could be regarded in one (or both) of two ways. First, it could be a settled administrative interpretation of the Act that it is never "proper" in "the opinion of the Attorney General" not to suspend deportation when a private bill was pending, an interpretation which would ordinarily be

entitled to great weight. Second, it could be the establishment of a class of situations as to which the Attorney General has always so exercised his discretion. The classification was reasonable, and a *departure* from it would be an arbitrary or capricious act, an abuse of discretion.

It is implicit in each of these cases that the Attorney General may in effect rule in advance as to how his discretion will be exercised, and that *following* such a rule is not a failure to exercise discretion. The fact that there is a rule does not "prejudge" the exercise of discretion as in *Accardi,* supra. Rather, it *is* the exercise of discretion, and since the power to make that determination has not been delegated, *Accardi* is readily distinguishable.

It is true that the regulation says that the petition is "automatically" revoked; hence it might be said that there is no separate act of following the rule of discretion established by that very regulation. Even under the regulation, however, the ministerial act of notice is required, and under the statute, if not also the regulation, revocation is not effective until notice is given, although revocation once effective is retroactive to the date of approval of the petition. We do not read the regulation as in conflict with the statute on that account. Revocation is "automatic" only in that no further exercise of discretion is required.

■ Still to be considered is whether, though there was an exercise of discretion, there was an abuse of discretion, in revoking the petition. We cannot say that there was an abuse of discretion here. As the consular official in Caracas stated, Stellas "never actively pursued [his] visa application," and he had had over two years of parole extensions to do so. Since this was so, and since Stellas' wife wished that the petition be withdrawn, there was sufficient reason to revoke the petition. See Scalzo v. Hurney, 225 F.Supp. 560 (E.D.Pa.1963) aff'd 338 F.2d 339 (3rd Cir. 1964).

We have examined appellant's other contentions, and find them without merit.

His case evokes sympathy, but he has been accorded the treatment prescribed by Congress, and the judgment of the District Court is therefore

Affirmed.

MOORE, Circuit Judge (dissenting):

Here is a case so violative of the fundamentals of due process that, in this day and age when courts seem greatly concerned with fair trial, the right to a hearing and a meaningful appellate review, I simply cannot understand, much less agree with, the result reached by the majority. The facts tell a story reminiscent of the "due process" of the Middle Ages, the Star Chamber—even of the shanghaiing of seamen.

Stellas entered this country in June, 1961, and was paroled for one month for medical reasons. He remained here after the expiration of his parole and in January 1962 married an American citizen, Nancy Stellas. When he was apprehended by immigration officials in New York City on June 11, 1963 the marriage had produced one daughter and his wife was expecting another child. In order to permit Stellas to make arrangements for the care of his family and for the ultimate adjustment of his immigrant status, INS reparoled him. Thereafter, Stellas' wife filed a petition with INS seeking nonquota immigrant status for him as the husband of an American citizen pursuant to 8 U.S.C. § 1154(b). This petition was approved. Stellas was unable, however, actively to pursue the visa application, which had been sent to Caracas, Venezuela, due to his lack of funds resulting from the expenses incurred in supporting his family and for medical and hospital services required by his wife. Recognizing that Stellas' presence in this country was essential to the welfare of his family, INS periodically extended his parole notwithstanding his failure to process the visa application, the last extension being granted on September 16, 1965 until March, 1966.

On November 18, 1965 Stellas upon INS request appeared voluntarily at the offices of INS, was informed that his parole had been revoked and was summarily taken into custody. An attempt was made by INS to put him on an airplane to take him back to Greece without an opportunity to be heard, to ascertain the basis for or to challenge the reason for his sudden change of status, or even to make arrangements for the members of his family whom he might never have seen again. As the majority opinion points out "only the issuance of an order of the District Court prevented his summary deportation."

The revocation of Stellas' parole was based solely on the revocation of the approved visa petition and upon the theory that the petition was automatically revoked under 8 C.F.R. § 206(b) (1) when Stellas' wife withdrew it on November 10, 1965. Thus, the effectiveness of the revocation of Stellas' parole, as the majority recognizes, turns on the validity of the regulation providing for the automatic revocation of an approved visa petition upon its withdrawal by a citizen spouse. While the Immigration and Nationality Act (the Act) authorizes an American citizen to file a petition with the immigration authorities requesting nonquota immigrant status for his or her spouse, that petition can be approved only by the Attorney General "after an investigation of the facts in each case * * * " 8 U.S.C. § 1155(c) (1964 ed.). As a corollary of the power of approval, the Attorney General is also authorized to revoke the approval of any petition "at any time, for what he deems to be good and sufficient cause * * * " 8 U.S.C. § 1156 (1964 ed.). Supposedly, the automatic revocation regulation contained in 8 C.F.R. § 206(b) (1) was promulgated to implement the Attorney General's power to revoke.

Stellas argues, and in my opinion properly so, that the power of the Attorney General to revoke is dependent upon a showing of "good and sufficient" cause; that the regulation does not comport with the statutory standard; and that automatic revocation of an approved visa petition based on the mere withdrawal of it by a citizen spouse constitutes a denial of

due process. Both the district court and the majority here rejected that position. Although the district court recognized that substantial hardship could result from such a procedure, since a wife could rid herself of her husband irrespective of any wrongdoing on his part, and children, if any, could be adversely affected by loss of their father, the court concluded that "Congress has strictly circumscribed the conditions under which aliens may be admitted to this country and * * * in this proceeding the Service has followed the law as laid down by Congress * * *" The majority in its decision embraced the district court's conclusion reasoning that the regulation is not at odds with the statute since it was promulgated by the Attorney General in the exercise of the administrative discretion granted to him by the Act. In the majority's view "all this regulation does is provide a substitute for the exercise of discretion on a case-by-case basis."

The Attorney General may have discretion to promulgate regulations to implement powers granted to him under the Act but whether the regulation involved here represents a proper exercise of discretion and meets the "good and sufficient cause" standard set forth in 8 U.S. C. § 1156 is quite another matter. Since the Attorney General's discretion is not unlimited and must be exercised in accordance with the standards laid down by Congress in the legislation authorizing administrative action, the critical issue presented here is whether 8 C.F.R. § 206 (b) (1) is at odds with 8 U.S.C. § 1156.

In my opinion, the automatic revocation regulation cannot be squared with the statutory standard of "good and sufficient cause." In addition, it constitutes an unauthorized delegation of the power to revoke approved visa petitions by the Attorney General to citizen petitioners. In my view, the administrative officials responsible for the revocation of Stellas' parole have not, contrary to the district court's conclusion, followed the law as laid down by Congress.

There is little question that the Attorney General by providing that his approval of visa petitions is automatically revoked by the withdrawal of the petition by a citizen spouse has delegated a complete and absolute power of revocation to such persons (here to Stellas' wife) despite the fact that the power to revoke is vested solely in him under 8 U.S.C. § 1156. Moreover, the citizen spouse in exercising that power is responsible only to herself. There is no requirement that her withdrawal be based on "good and sufficient cause." This is not to say that this function could not be delegated under any circumstances but, rather, that, if it is delegated, it must be performed in accordance with the safeguards with which Congress has circumscribed it. The regulation as it stands directly conflicts with 8 U.S.C. § 1156 and fails to accord a modicum of due process to parties aggrieved by acts of revocation.

The majority's reliance on decisions, holding that a parolee is deportable without a hearing, to justify the failure to grant Stellas a hearing with respect to the revocation of the approved visa petition, is misplaced. Stellas was not a mere parolee. Rather, the Attorney General's approval of the visa petition filed by his wife effected a change in his status, cf. United States ex rel. Zacharias v. Shaughnessy, 221 F.2d 578 (2d Cir. 1955); compare United States ex rel. Paktorovics v. Murff, 260 F.2d 610, 614 (2d Cir. 1958), and guaranteed his eligibility for nonquota immigrant status. See 8 C.F.R. §§ 42.40, 42.41 (1964 ed.). In other words, Stellas possessed rights separate and independent of his rights as a parolee. While it is no doubt true that the approval of a visa petition does not confer a vested right to nonquota status on the immigrant spouse involved, see Amarante v. Rosenberg, 326 F.2d 58 (9th Cir. 1964), that fact has no bearing on whether Congress intended to authorize summary disapproval. By directing that approval can be withdrawn only where "good and sufficient cause" exists, Congress made clear its intention

that persons whose interests are at stake should be afforded an opportunity to be heard on the question of revocation. Moreover, the fact that disapproval may result in substantial hardship, as evidenced by the circumstances here, militates in favor of granting a hearing. Indeed, the Attorney General himself has recognized the desirability of such a practice by providing that, in all cases where revocation of approval is not automatic, it "shall be made only upon notice to the petitioner who shall be given an opportunity to offer evidence in support of the petition and in opposition to the grounds alleged for revocation of the approval." 8 C.F.R. § 206.3 (1964 ed.). Congress will have to be much more specific "before I will agree that it has authorized an administrative officer to break up the family of an American Citizen *· * *" United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 551–552, 70 S.Ct. 309, 317 (1950) (Jackson, J., dissenting).

Furthermore, there is simply no justification for the Attorney General's determination that the withdrawal of an approved visa petition for any reason and under any circumstances by a citizen spouse constitutes good and sufficient cause for revocation of prior approval of the petition. As the regulation stands, the slightest whim of a spouse may be the basis for revocation. Also, there is nothing to prevent an entirely involuntary withdrawal, resulting from duress or influence exerted by third parties, from effecting a revocation. Thus, it is readily apparent that there is no necessary correlation between the mere act of withdrawal and the purpose of Congress in authorizing the filing and approval of visa petitions by citizen spouses. "The Immigration and Nationality Act contemplates an exception to quota requirements in order to keep families together." Scalzo v. Hurney, 225 F.Supp. 560, 561 (E.D.Pa.1963), aff'd, 338 F.2d 339 (3d Cir. 1964). While Congress in authorizing the exception was obviously interested in aiding the citizen spouse, it was also concerned with the family as a unit. In view of that concern, the mere unexplained desire of one spouse to rid herself of the other cannot be deemed per se sufficient cause to disrupt the unit, particularly where, as here, there are minor children involved. It is possible, of course, that withdrawal of a petition may be entirely justified as, for example, where the parties have been married for only a few months, are incompatible and wish to avoid the time and expense of litigation as a means for terminating the marriage. Yet, the regulation as it stands encompasses situations in which automatic revocation is inconsistent with the desire of Congress to preserve the family unit and, in addition, fails to provide for any semblance of due process.

Moreover, the failure of the majority even to attempt to justify the regulation in terms of the statutory standard of "good and sufficient cause" should not go unnoticed. Relying on Mastrapasqua v. Shaughnessy, 180 F.2d 999 (2d Cir. 1950), the majority assert that "the regulation here * * * does not create an arbitrary or capricious class of cases." That observation, as well as the *Mastrapasqua* decision, is quite irrelevant to the issue under consideration and, in any event, is unsupported by anything in the majority opinion or the record. Cf. Mastrapasqua v. Shaughnessy, supra, at 1003. In *Mastrapasqua* this court was not confronted with a question of whether an administrative regulation was inconsistent with a statutory standard. In addition, the exercise of power involved there by the Attorney General, to wit, the power to permit the voluntary departure of deportable aliens, under the then Section 155(c) of 8 U.S.C. (repealed and now covered by 8 U.S.C. Section 1254 (a)), was not governed by a statutory standard comparable to the "good and sufficient cause" standard involved here.

The impropriety of 8 C.F.R. § 206(b) (1) is well illustrated by the circumstances of this case. There is evidence showing that the withdrawal of the visa petition by Stellas' wife was motivated by

her desire to prevent Stellas from interfering with an adulterous affair in which she began participating in October 1965. There is no history of marital difficulties prior to the fall of 1965. At one point she informed INS that Stellas had mistreated her and failed to support the family. There is nothing else in the record, however, to support that claim. Indeed, affidavits submitted below by persons acquainted with the Stellas family indicate that Stellas was devoted to his family and worked to support it, at times having two jobs. In any event, the entire course of conduct of Stellas' wife indicates that her decision to withdraw the petition in November was emotionally based and that she is not firmly committed to disrupting the family unit. After withdrawing the visa petition in November, she filed a new one on December 6th (allegedly as the result of sympathetic pleas by Stellas' friends) but withdrew it again on December 15th, following rather extensive questioning by INS officials as to what she intended to do with the new petition. Also, it is alleged that she indicated to Stellas as late as March 1966 that she would try to live with him again. Finally, it should be noted that neither Stellas nor his wife has ever taken legal action to dissolve the marriage.

Affidavits also stated that Nancy Stellas was an irresponsible mother; that she was never gainfully employed while living with Stellas; and that she intends, following Stellas' departure, to seek welfare assistance for herself and the children (there is nothing to indicate that the "other man" involved intends to support her and the children). Moreover, it is not without significance that the custody of her two children by a prior marriage was awarded to her former husband.

Thus, the record indicates (a) that the responsibility for the marital discord is not free from doubt; (b) that Stellas' wife's decision to withdraw the visa petition was motivated by self-interest, designed to serve an unlawful purpose, and failed to take account of the children's welfare; and (c) that Stellas' deportation would be contrary to the public interest in that the members of his family probably would become public charges and it would adversely affect the lives of his minor children. INS itself recognized that Stellas' presence in this country was essential to the welfare of his family when it granted him parole in June 1963 and periodically extended it permitting him to remain here for over two years. Compare Pimental-Navarro v. Del Guercio, 256 F.2d 877 (9th Cir. 1958).

The Attorney General or INS should not perform the function of a marriage counselor. Their judgment concerning domestic relations problems should not be substituted for the judgment of state authorities whose duty it is to enforce domestic relations laws. Rather, the Attorney General should make an objective appraisal of the reasons for and against withdrawal of an approved visa petition and consider the effect of the summary deportation of a spouse on the welfare of the family unit, particularly where, as here, minor children are involved and the family has lived together in this country for a substantial period of time. Such an approach not only guarantees the effectuation of the Congressional policy underlying the exception to the quota requirements for immigration spouses of American citizens, but also guarantees that the parties whose interests are at stake will not be deprived of those interests without the benefits of due process of law.