### YUK–LING WU JEW and Wung Gip Seto, Plaintiffs,

v.

### ATTORNEY GENERAL, Defendant.

#### Civ. A. No. 81–0533.

United States District Court, District of Columbia.

Oct. 29, 1981.

Charles Gordon, Washington, D.C., for plaintiffs.

Eric A. Fisher, James P. Morris, Dept. of Justice, Washington, D.C., for defendant.

### MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

The plaintiffs in this proceeding challenge the application of Immigration and Naturalization Service (INS or Service) regulations by the United States Department of Justice to deny derivative visa eligibility to the surviving family of a deceased alien who had been approved for fifth preference immigrant status.[1] Plaintiff Jew is a naturalized American citizen and a sister of Doo Yim Wu, the deceased. Plaintiff Seto is his widow. Plaintiff Jew successfully filed a visa petition seeking fifth preference immigrant status for her brother, then a citizen of China. Doo Yim Wu died before he could take advantage of the visa. His death resulted in the cancellation of any rights of his wife and family to preference status. The plaintiffs contend that the INS regulation providing for the automatic revocation of a fifth preference visa upon the death of the beneficiary,[2] contravenes an

---

1. Section 203 of the Immigration and Nationality Act, 8 U.S.C. § 1153(a) establishes six preferences for immigrant status and the portion pertaining to fifth preferences provides in pertinent part:

   [v]isas shall be made available ... to qualified immigrants who are the brothers or sisters of citizens of the United States.

   8 U.S.C. § 1153(a)(5).

2. The regulation provides in pertinent part:

   [t]he approval of a petition ... is revoked as of the date of approval ... if any of the following circumstances occur before the beneficiary's journey to the United States commences: ... *the deaths of the petitioner or the beneficiary* ....

   8 C.F.R. § 205.1 (emphasis added).

express statutory grant of discretionary authority under the Immigration and Nationality Act (Act or Immigration Act)[3] warranting reinstatement of the derivative visa eligibility extended to the surviving relatives. The Court finds that the promulgation and subsequent application of the revocation regulation is reasonable and not inconsistent with the Act. Accordingly, summary judgment is granted for the defendant and this proceeding is dismissed.

## I. Background

There is no dispute as to the material facts and they may be briefly stated. Plaintiff Jew was born in China and became a naturalized United States citizen in March 1974; plaintiff Seto is a citizen and resident of China.[4] One year following her naturalization, plaintiff Jew filed a visa petition with the Baltimore Office of the INS seeking fifth preference immigrant status for her brother Doo Yim Wu. The Director of that Office approved the petition the following year and forwarded it to the United States Consulate in Hong Kong.

In January 1979 the American Consul in China notified plaintiffs that the Wu family should report to the Hong Kong office for the processing of visas for the family, and passport application. While the fifth preference status was approved only as to Doo Yim Wu, his family became derivatively eligible for immigrant visas under the Immigration Act.[5] Further correspondence from the American Consul notified the Wus that issuance of the visa was forthcoming and that finalizing procedures would be undertaken upon their arrival at the Hong Kong office. Because of travel restrictions, however, the family was unable to travel to Hong Kong and in February they proceeded to an alternate office located in Guangzhou, China, where they were informed that their papers could not be processed at that time.

Shortly thereafter, Mr. Wu's health deteriorated and following a period of hospitalization, he died on July 11, 1980. During Wu's illness, his wife appeared before the American Consul at Guangzhou where she learned that the visas could not be processed without her husband's presence.

Upon learning of Wu's death, the Consul promptly notified plaintiff Seto that immigrant visas would not be issued to a surviving spouse and children absent approval by the Immigration Service. The visa petition was then returned to Baltimore, the originating office, for formal revocation in accordance with standard procedures. Plaintiff Jew sought reconsideration of the revocation on August 13. The request was denied by the District Director on October 1, 1980. Denial was founded on INS regulations which provide for automatic revocation of a visa petition in the event of the beneficiary's death.[6] The District Director ruled that the visa petition expired under the regulations upon Wu's demise, and the family's eligibility likewise expired. Fol-

3. Section 205 of the Act provides in pertinent part:

    [t]he attorney general may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition provided by him . . . .

8 U.S.C. § 1155.

4. Plaintiff Yuk-Ling Wu Jew has filed this action with her sister-in-law, Wung Gip Seto. The sister-in-law is a native citizen of China and has never been to the United States. An alien clearly has no right to immigrate to this country, *Kleindienst v. Mandel*, 408 U.S. 753, 762, 92 S.Ct. 2576, 2581, 33 L.Ed.2d 683 (1972), and an alien outside the United States, such as Seto, typically lacks standing to challenge immigration determinations denying preferred status. *See, e. g., Chinese American Civic Council v. Attorney General*, 566 F.2d 321 (D.C. Cir.1977) (doubting standing but finding it unnecessary to decide the correctness of a lower court finding of lack of standing); *Rumahorbo v. Secretary of Labor*, 390 F.Supp. 208 (D.C. Cir.1975) (alien outside United States held to lack standing to challenge a denial of a third preference immigrant visa).

5. Section 1153(a)(8) of the Act provides in pertinent part:

    [a] spouse or child . . . shall, if not otherwise entitled to an immigrant status and the immediate issuance of a visa [under a § 1153 preference status] . . . be entitled to the same status, and the same order of consideration . . . if accompanying or following to join, his spouse or parent.

6. *See* footnote 2, *supra*.

lowing that denial, plaintiffs promptly filed a complaint seeking declaratory and injunctive relief to secure reinstatement of Wu's fifth preference visa petition for the benefit of his surviving family.

## II. Legal Analysis

In considering the plaintiffs' substantive claims, it is first necessary to examine the scope of the Attorney General's discretion as it pertains to immigration matters and second, to determine whether the regulation at issue is a proper exercise of discretion consistent with legislative intent.

The Court finds that the authority of the INS over the expulsion or exclusion of aliens is particularly broad and that the manner in which the Service denied immigrant status to Wu's family does not constitute an abuse of discretion. Plaintiffs argue that the revocation provision contained in section 205.1 of the regulations violates the Attorney General's duty to exercise discretion when revoking visas. However, the regulation, insofar as it provides for automatic revocation of visa approval upon death of the beneficiary, is a valid exercise of discretion. Indeed, the application of the mandatory revocation mechanism to deny visa eligibility to Wu's family is fully consistent with the legislative intent embodied in the derivative visa eligibility which Wu's family possessed under the Immigration Act until his death.[7]

### A. The Scope of Discretion

The concomitant authority of Congress and the Executive over matters pertaining to immigration is vast. As the Supreme Court noted in *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), a case unsuccessfully challenging INS refusal to recognize the relationship between illegitimate children and their natural fathers:

it is important to underscore the *limited scope* of judicial inquiry into immigration legislation .... Our cases "have long recognized the power to expel or exclude aliens is a fundamental sovereign attribute exercised by the Government's political departments *largely immune from judicial control.*"

430 U.S. at 792, 97 S.Ct. at 1478 (citations omitted) (Emphasis added.)[8] *Accord, Mathews v. Diaz,* 426 U.S. 67, 81–82, 96 S.Ct. 1883, 1892, 48 L.Ed.2d 478 (1976) (upholding the imposition of additional criteria for aliens as a precondition to eligibility for a federal medical insurance program).

Thus courts have refused to overrule agency interpretations of statutory authority in the area of immigration absent an affirmative showing that the interpretation is unreasonable or contrary to legislative intent. *Nazareno v. Attorney General,* 512 F.2d 936, 939–41, *cert. denied,* 423 U.S. 832, 96 S.Ct. 53, 46 L.Ed.2d 49 (1975) (refusing to overturn INS policy denying petitions by American citizens to classify certain unmarried adult aliens as adopted children); *cf., United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (recognizing broad discretion in the Attorney General but requiring a hearing prior to certain deportations). The Court concludes that no such showing can be successfully advanced in this case.

### B. The Regulation

A congressional grant of discretion to accord or revoke an immigration privilege does not trigger a requirement that each

7. While plaintiff has elected not to seek relief based on an estoppel theory (Plaintiff's Reply Brief at 2), it bears noting that estoppel may only be invoked in immigration cases where the conduct complained of amounts to "affirmative misconduct." *See, e. g., Santiago v. Immigration & Naturalization Serv.,* 526 F.2d 488, 491–92 (9th Cir.), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794, citing *Immigration & Naturalization Serv. v. Hibi,* 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7 (1973). Plaintiff has not advanced an argument on this score with re-

gard to the delays in obtaining visa approval and the processing delays in this case. The delays arose out of a variety of factors and do not constitute misconduct sufficient to warrant application of the estoppel doctrine.

8. Quoting *Shaughnessy v. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953) (affirming the authority of the Attorney General to exclude an alien resident without a hearing).

such proceeding be considered on a case by case basis. Thus a mandatory revocation regulation is not necessarily at odds, even with a broad statutory grant of discretion. As the Second Circuit recognized:

> [t]he Attorney General may govern the exercise of his discretion by written or unwritten rules; indeed it would be remarkable if he did not. Any such decision is an application of facts to principles. All [the] regulation does is provide a substitute for the exercise of discretion on a case by case basis.

*United States ex rel. Stellas v. Esperdy*, 366 F.2d 266, 269 (2d Cir. 1966),[9] *vacated and remanded on other grounds*, 388 U.S. 462, 87 S.Ct. 2121, 18 L.Ed.2d 1322 (1967). In that case an automatic revocation regulation resulting in the deportation of an alien crewman whose one month medical parole had expired was upheld. The Second Circuit panel reasoned that a regulation which is consistent with the intent of Congress constitutes the proper exercise of discretion and represents a determination by the agency that no further exercise of discretion is mandated. 366 F.2d at 270.

More recently, the Second Circuit took the position that the fact that an administrator is vested with discretionary power should not preclude the exercise of that authority by appropriate rulemaking "if his determination is founded on considerations rationally related to the statute he is administering." *Fook Hong Mak v. Immigration & Naturalization Serv.*, 435 F.2d 728, 730 (2d Cir. 1970). *Mak* involved an alien who had been granted permission to travel through the United States en route to South America from China. When it was discovered that he had remained in this country six months later, the Service initiated deportation proceedings. The alien then sought an adjustment of his status in order to remain in this country. The court upheld a regulation prohibiting the exercise of visa eligibility and deportation review rights of aliens admitted for purposes of lawful transit only. The opinion in *Mak* concluded that by promulgating the regulation, "[t]he administrator has simply determined that the one paramount element creates such 'likeness' that other elements cannot be so legally significant as to warrant a difference in treatment." 435 F.2d at 730.[10]

## C. Congressional Intent

The application of the automatic revocation regulation in this case is fully consistent with the congressional intent underlying the scope of the derivative visa eligibility accorded spouses and children pursuant to the Immigration Act. Section (a)(8) extends derivative eligibility to the spouse and children of a preference immigrant corresponding to the visa status of the preference recipient where it can be shown that the spouse or child shall be "accompanying, or following to join, his spouse or parent."

In *Santiago v. Immigration & Naturalization Serv.*, 526 F.2d 488 (9th Cir.), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1975), the court held that the immigrant status conferred pursuant to section (a)(8)[11] is a derivative rather than an actual preference:

> there is nothing in [the] language to indicate that Congress ever intended that the grant of a preference to one alien would effectively work a grant of a like preference to the members of his family so that

---

**9.** Cited with approval in *Fook Hong Mak v. Immigration & Naturalization Serv.*, 435 F.2d 728, 730–31 (2d Cir. 1970). *Compare Leano v. Immigration & Naturalization Serv.*, 460 F.2d 1260 (9th Cir. 1972) (concluding that in the "unusual circumstances" of that case, the strict position taken by INS was not required); *Pierno v. Immigration & Naturalization Serv.*, 397 F.2d 949, 950–51 (2d Cir. 1968) (questioning *Stellas* but predating *Fook Hong Mak*).

**10.** *See also, Chiravacharadhikul v. Immigration & Naturalization Serv.*, 645 F.2d 248, 250–51 (5th Cir. 1981) ("... only a clear showing of a contrary intent by Congress will justify overruling the agency's regulations") (citations omitted).

**11.** The *Santiago* decision predated an amendment to 8 U.S.C. § 1153 which effectively changed, *inter alia*, section (a)(9) to section (a)(8).

they might enter at whatever time they wished.

526 F.2d at 491.[12]

Plaintiffs claim that the relevant immigrant preference classifications contained in section 1153 of the Act are designed to foster close family ties and that revocation of Wu's visa petition upon his death violates this policy since plaintiffs are denied an opportunity to obtain immigrant status for the surviving family. In support of this contention, they rely upon *Immigration & Naturalization Serv. v. Errico*, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966). That case upheld an Immigration Act exemption precluding deportation of a spouse, parent or child of an American citizen notwithstanding the fact that a visa for the relative may have been fraudulently obtained. The familial concerns embodied in the decision are given full effect under section (a)(8) which extends derivative visa status to the immediate family members of a preference immigrant so that the family may immigrate together. To deny derivative immunity upon the death of the preference immigrant through whom the eligibility is derived, however, does not impugn the integrity of the *Errico* decision since it may be argued that the need for the family to migrate to this country dissolves when the primary beneficiary can no longer avail himself of the privilege afforded under the Act.

In sum, the application of the INS automatic revocation regulation, 8 C.F.R. § 205.-1, to the facts presented does not contradict the statutory grant of discretion conferred upon the Attorney General. The promulgation of the regulation in itself reflects the proper exercise of discretion by the Service in a manner consistent with the legislative intent embodied in sections (a)(5) and (a)(8) of the Immigration Act, thus the facts of this case fail to provide a catalyst sufficient to warrant dispensing with the operation of that regulation.

An appropriate order will be entered.

12. *See generally*, 2 C. Gordon & H. Rosenfield, *Immigration Law and Procedure* § 2.27i, 2–213 (rev. ed. 1981); E. Harper, *Immigration Laws of the United States*, ch. 10 § 11 and ch. 11 § 3(a)(4) (3d ed. 1975).