**Vicente Villamosa NAZARENO et al., Appellants,**

**v.**

**ATTORNEY GENERAL OF the UNITED STATES.**

**No. 74–1148.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1975.

Decided March 10, 1975.

Mark A. Mancini, Washington, D. C., with whom Jack Wasserman and Benjamin M. Parker, Washington, D. C., were on the brief for appellants.

Richard I. Chaifetz, Atty., Dept. of Justice, for appellee.

---

Before LEVENTHAL and ROBIN-SON, Circuit Judges, and MARKEY,* Chief Judge for the United States Court of Customs and Patent Appeals.

LEVENTHAL, Circuit Judge:

Appellants, Fe Nazareno and Enrique Templora Targa, are unmarried adult aliens who where adopted pursuant to state judicial decrees in 1970 and 1972 respectively.[1] The Immigration and Naturalization Service denied petitions filed by their adoptive parents to classify them as the daughter and son of United States citizens for purposes of qualifying under the first preference classification of 8 U.S.C. § 1153 (1970). Following unsuccessful efforts before the Board of Immigration Appeals, appellants filed an action for declaratory judgment and for review in the United States District Court for the District of Columbia. The District Court granted the defendant's motion for summary judgment and dismissed the complaint.

The sole question presented on appeal is the validity of the Board of Immigration Appeals' interpretation of section 203(a)(1) of the Immigration and Nationality Act of 1952. 8 U.S.C. § 1153(a)(1) (1970). That section provides:

> Visas shall be first made available, in a number not to exceed 20 per centum of the number specified in section 1151(a)(ii) of this title, to qualified immigrants who are the unmarried sons or daughters of citizens of the United States.

The Board ruled that "sons or daughters" in section 203(a)(1) does not include an adopted person who is excluded from the definition of child in section 101(b)(1)(E).[2] It thus ruled that the phrase excluded a person adopted at or over the age of 14, or one adopted under the age of 14 who has not thereafter been in the legal custody of or resided with the adopting parents for at least two years.[3] In essence the Board concluded that a boy or girl could not be a "son" or "daughter" of a United States citizen parent under section 203 if he or she could not previously have been that citizen's "child" under section 101 of the Act.[4]

We find that the Board's ruling rests on a reasonable interpretation of the statute and affirm the District Court's grant of summary judgment to the defendant.

## I. BACKGROUND

The Immigration and Nationality Act of 1952 established a system of immigrant selection based on national origin quotas. As a general matter, the system allocated a yearly immigration total among non-Western Hemisphere nations according to a quota for each country derived from the percentage of the 1920 United States population tracing its origin to that country.[5] The immigrant vi-

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

1. *See* Memorandum and Order, Civ. Action No. 970–73 (D.D.C., Nov. 20, 1973) (App. 10). Appellants were both 32 years old at the time of the District Court decision.

2. Section 101(b)(1)(E), 8 U.S.C. § 1101(b)(1)(E) (1970):

   (b) As used in titles I and II—
   (1) The term "child" means an unmarried person under twenty-one years of age who is—
   *   *   *   *   *   *
   (E) a child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years: *Provided,* That no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or statute under this act.  [; or]

3. *See* In re Nazareno, File No. A17–743–260 (B.I.A., Mar. 29, 1973) (App. 4–5); In re Targa, File No. A19–165–560 (B.I.A., Mar. 30, 1973) (App. 6–7).

4. This conclusion may rest on a reading of the Act which harmonizes the meanings of son, daughter, parent, and child or on a view of the meaning of adoption for purposes of the immigration laws. *See* discussion at and immediately preceding note 22 *infra.*

5. *See* 8 U.S.C. §§ 1151, 1152 (1964), as amended (1970). A major exception to the national origin quota system was the severe limitation placed on the number of visas allocated to aliens from "areas within the Asia-Pacific triangle."

sas assigned to each country were allotted to qualified quota applicants according to their preference classification. Under the 1952 statute sons or daughters of citizens of the United States were entitled to fourth preference.[6] A child of a citizen of the United States, as defined in section 101(b)(1), was a nonquota immigrant who could enter the United States without regard to the number of visas assigned his country of origin.[7]

The original Act contained no definition of son or daughter and made no reference to adopted individuals in the definition of "child." In *Matter of R* in 1953 the Board held that an alien adopted at age 24 was entitled to a fourth preference status as a "son" even though he would not prior to 21, have been in the class of person entirely exempt from the quota system because included within the definition of a "child."[8] A few months after that decision, the Board held in *Matter of C* that a 21-year-old stepdaughter could not qualify as a "daughter."[9] It reasoned that since the term child included a definition of a stepchild the "failure to so define the term 'daughter' . . . leads to the inference that such omission was . . intended to confine the term 'daughter' to an actual blood relative."[10]

In 1957, Congress amended the Act to include within the statutory definition of "child" in section 101(b)(1)(E)—which meant an entitlement to entry without regard to quota—minors adopted under the age of 14 who thereafter resided with or were in the legal custody of their adopting parents for at least two years.[11] No change was made in section 203(a)(4) pertaining to the preference status of sons and daughters of United States citizens. In 1959, Congress again amended the Act improving the preference status of unmarried sons and daughters, but limiting the second, third, and fourth preferences to sons and daughters who, prior to reaching age 21, would have qualified as a "child" of the petitioning parent.[12] This amendment had the effect of overruling *Matter of R.*

The present controversy arises from the ambiguity created by the 1965 amendment to the Act. The primary objective of the 1965 revisions was to replace the national origin quota system with a system which allocates a total of 170,000 visas per fiscal year on the basis of preference category and application date subject to a maximum 20,000 visas per country.[13] The revision replaced the old preference designations with a nine category system which promoted unmarried sons and daughters of United States citizens from the second to the first preference. The portion of the 1965 amendments restructuring the preference classifications omitted the section added in 1959 which defined sons and daughters in terms of a parent-child relationship. As a result, the Act presently includes a reference to adoption in the definition of child, a definition of parent

---

6. *See* Section 203(a) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1153(a) (1952), as amended (1970).

7. *See* Section 101(a)(27)(A) of the Immigration and Nationality Act of 1952, 66 Stat. 169 (1953).

8. *See* 5 I&N Dec. 438, 439 (B.I.A. 1953).

9. *See* 5 I&N Dec. 512 (B.I.A.1953).

10. *See id.*

11. *See* Section 101(b)(1)(E), 8 U.S.C. § 1101(b)(1)(E) (1970). The provision is set forth in note 2 *supra.*

12. The 1959 amendment extended the second and third preferences to unmarried sons or daughters of United States citizens and of aliens lawfully admitted for permanent residence, respectively. It also added the following language to section 205(b) of the Act:

> No petition for quota immigrant status or a preference in behalf of a son or daughter under paragraph (2), (3), or (4) of section 203(a) of the Immigration and Nationality Act shall be approved by the Attorney General unless the petitioner establishes that he is a parent as defined in section 101(b)(2) of the Immigration and Nationality Act of the alien in respect to whom the petition is made.

Act of September 22, 1959, § 5(a), 73 Stat. 644.

13. *See* 8 U.S.C. §§ 1151, 1152 (1970); S.Rep. No. 748, 89th Cong., 1st Sess. 10, U.S.Code Cong. & Admin.News, p. 3328 (1965).

dependent on the term child, and no definition of son or daughter.

Subsequent to the 1965 amendment, the Board rendered its decision in *Matter of Caramanzana* which denied an alien adopted at age 21 preference status as an "unmarried daughter." [14] It found that the criteria set forth in section 101(b)(1)(E) concerning an adopted child had to be satisfied for an applicant "to be considered adopted for immigration purposes" and stated that the "failure to specifically reenact" the 1959 provision did not serve as an "indication that any change was intended" by Congress. [15] In the present cases, the Board reaffirmed its position stating that "aliens adopted by United States citizens are not eligible for preference status as a 'son' or 'daughter' unless they were adopted in conformity with Section 101(b)(1)(E)." [16]

## II. MERITS

### Textual considerations

If one were to look at the current statute afresh, one would find it entirely natural to suppose that a statute using terms like "child," "son," "daughter," and "parent," used them in an interrelated way, and did not contemplate that a person who was ineligible to qualify as a "child" of a "parent" would at the same time be eligible as a "son" or "daughter."

The specificity of Congress in excluding a person adopted over the age of 14 from the category of "child" may be tak-

en, therefore, as a likely legislative direction that such person would be excluded from the category of "son." A possible ambiguity arises from the difference in consequences (a "child" having a more favored status than a "son") and from legislative history. We turn to the legislative history to see whether this provides an ascertainable legislative intent that the terms "son" and "child" be defined differently as to adopted persons.

### Legislative History

What raises a question here is the fact that in 1959, there was a provision that restricted the terms "sons" and "daughters" to "parent-child" relationships, and that this section was removed in 1965. An ambiguity arises from the absence of explicit legislative history as to the purpose of the deletion. [17] The omission may have been inadvertent, or merely stream-lining of the superfluous, that even without an express provision it was obvious that the specifically limited recognition of adoption for a "child" would be applicable to a "son" or "daughter." However, it is arguable that Congress may have intended to sever the link between the terms "sons and daughters" and "parent and child" through its unexplained deletion of the 1959 provision.

We noted in a recent opinion that in construing ambiguous statutes "Supreme Court decisions counsel us to show 'great deference to the interpretation given the statute by the officers or agency charged

---

**14.** 12 I&N Dec. 47 (B.I.A. 1967).

**15.** *Id.* at 48.

**16.** *See* In re Nazareno, *supra* note 3, (App. 5); In re Targa, *supra* note 3, (App. 7).

**17.** Cf. Rosenberg v. Yee Chien Woo, 402 U.S. 49, 54–55, 91 S.Ct. 1312, 28 L.Ed.2d 592 (1971) (discussing the omission of the words "firmly resettled" from the requirements for qualification under the seventh preference classification).

The Administration bills introduced in the 88th and 89th Congresses left intact the 1959 provision defining son and daughter in terms of a parent-child relationship. The deletion of

that provision in 1965 is traceable to a bill introduced by Representative Feighan that was the source of the quota system adopted by the House and subsequently enacted into law. Legislative discussion of the Feighan bill does not indicate the purpose, if any, of this deviation from the Administration proposal. However, the fact that the Feighan bill, H.R. 8662, proposed to eliminate the numerical limitation on unmarried sons and daughters (placing them on a par with spouses and children) suggests that its omission of the 1959 definition of sons and daughters was not intended to broaden the scope of those terms to take account of the distinction between non-quota and first preference status. *See* text accompanying note 23 *infra.*

with its administration.' " [18] Here the Board's interpretation deserves great weight because it represents both "a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion" [19] and the "uniform practice of the authorities" maintained consistently since Congress inserted the language limiting adoptions for "child" status.[20] We are required to sustain a construction adopted by the Board if it is reasonable and not contrary to the discernible intent of Congress, even if it is not "the only reasonable" interpretation of the Act.[21]

Several considerations point to the reasonableness of the challenged interpretation. First, the Board's decision harmonizes the undefined terms, sons and daughters, with the statutory meaning of parent and child. It avoids the curious situation in which a person who was never capable of being a "child" of his or her parents may nonetheless be their "son" or "daughter." Second, the Board's reasoning in *Matter of Caramanzana* regarding persons considered adopted for immigration purposes parallels, though does not rely upon, state court decisions we have surveyed which generally construe statutes referring to the adoption of a "minor child" as excluding the adoption of adults.[22] Third, the Board's ruling is consistent with its decision in *Matter of C* considered in conjunction with the 1957 amendment expanding "child" to include certain adopted children. When *Matter of R* was decided, the Board had more latitude because there was nothing in the statutory provisions that specifically signified a legislative intention to exclude or restrict the eligibility of adopted persons. The provision adding section 101(b)(1)(E) in 1957 is a constraint on such latitude.

Finally, the Board's limitation on preferences open to persons adopted after age 14 avoids the use of adoption as a fraudulent means of gaining improved immigration status, especially since many such adoptions, and certainly adult adoptions, do not result in either legal obligations or a living relationship among the parties conducive to rooting out fraud. The avoidance of fraud was likely a reason for the limitations on adoption in the 1957 amendment. Congress could have chosen to cope with the fraud problem by providing means for investigation, but that would have imposed a substantial burden on the system.

It is conceivable as appellants argue that Congress intended to draw a tight classification for the nonquota status accorded children, and to provide a more liberal category for the first preference quota status of unmarried sons and daughters. But no such distinction appears in the legislative history. If anything, the legislative history of the 1965 amendment indicates that the statutory rearrangement was not intended to make any substantial change as to adopted persons.[23] In these circum-

---

18. *See* NRDC v. Train, 510 F.2d 692 at 706 (D.C.Cir., 1974), *quoting* Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

19. *See* Power Reactor Development Co. v. International Union of Electricians, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961), *quoting* Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933). The 1967 decision in *Matter of Caramanzana, supra* note 14, constitutes a contemporaneous construction of the first preference classification of the new visa system adopted by Congress in 1965.

20. *See* Louisville & N.R.R. v. United States, 282 U.S. 740, 757, 51 S.Ct. 297, 75 L.Ed. 672 (1931). The Board has followed its present interpretation of the terms "son" and "daughter" since its 1960 decision in Matter of P, 8 I&N Dec. 527 (B.I.A.1960), and has consistently interpreted those terms as used in the present first preference provision adopted in 1965.

21. *See* Unemployment Comm'n v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 91 L.Ed. 136 (1946).

22. *See* 12 I&N Dec. 47, 48 (B.I.A.1967); Annot., 21 A.L.R.3d 1012, 1016, 1022–23 (1968); 2 Am.Jur.2d Adoption § 11, at 868 (1962).

23. *See* note 17 *supra*. The 1965 amendments focused primarily on the replacement of the national origin quota system. *See* text accompanying note 13 *supra*. Although preference status of unmarried sons and daughters of United States citizens was modi-

stances we decline to overrule an interpretation by the Board which we cannot say was either unreasonable or contrary to discernible legislative intention.

Affirmed.

fied and the 1959 express limitation was omitted in 1965, Congress retained section 101(b)(1)(E)'s definition of adopted child as the sole statutory reference to adoption.