**Irene DELGADO, Plaintiff,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Defendant.**

**No. 78 Civ. 4336 (ADS).**

United States District Court,
S. D. New York.

Aug. 10, 1979.

Antonio C. Martinez, Peter Hirsch, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for defendant; by Katherine J. Trager, Sp. Asst. U. S. Atty., New York City, of counsel.

## OPINION

SOFAER, District Judge:

This is an action for judicial review of a decision of the New York District Director of the Immigration and Naturalization Service denying plaintiff's petition to obtain a preferential immigration classification for her alleged half-brother Luis Mack ("Luis"). The case is currently before the court on cross-motions for summary judgment. Fed. R.Civ.P. 56.

Under normal immigration procedures, aliens seeking to enter the United States as immigrants are issued immigrant visas based on the chronological order in which they qualify. 8 U.S.C. § 1153(a)(8). The

Immigration and Nationality Act (INA), however, grants preferential status to applicants who are close relatives of United States citizens and permanent residents. The fifth preference under this scheme is granted to "brothers or sisters of citizens of the United States." 8 U.S.C. § 1153(a)(5). While neither "brother" nor "sister" is defined in the INA, these terms have been held to apply only in cases where both a petitioner and a beneficiary can demonstrate that each is a "child" of a common parent or parents within the meaning of Section 101(b)(1) of the Act. 8 U.S.C. § 1101(b)(1). *See, e. g., Nazareno v. Attorney General*, 168 U.S.App.D.C. 22, 512 F.2d 936, *cert. denied*, 423 U.S. 832, 96 S.Ct. 53, 46 L.Ed.2d 49 (1975); *Beltre v. Kiley*, 470 F.Supp. 87 (S.D.N.Y.1979). Section 101(b)(1) provides in relevant part:

The term "child" means an unmarried person under twenty-one years of age who is—

(A) a legitimate child; or

\* \* \* \* \* \*

(C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

(D) an illegitimate child, by, through, or on whose behalf a status, privilege, or benefit is sought by virtue of the relationship of the child to its natural mother . . .

Petitioner, a native of the Dominican Republic, is a naturalized citizen of the United States. On May 25, 1977, petitioner filed a fifth preference petition on behalf of Luis with the New York District Office of the Immigration and Naturalization Service.[1] On June 19, 1977, the District Director de-

---

1. The Attorney General is charged with the general enforcement and administration of the immigration and naturalization laws and has virtually unfettered power to delegate authority

nied the petition. The District Director found that petitioner and Luis, having the same father and different mothers, were illegitimate at birth and that neither had been subsequently legitimated as required by Section 101(b)(1)(C) of the INA. As a result, the District Director concluded that Luis was not petitioner's brother for purposes of obtaining an immigration preference.[2]

Petitioner chose not to exercise her right to appeal to the Board of Immigration Appeals ("the Board"). 8 C.F.R. § 3.1(b)(5). Ordinarily, this would preclude judicial review, because a party must exhaust administrative remedies before challenging an agency's determination in court. *See generally McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); 5 Mezines, Stein, & Gruff, Administrative Law § 49.01 *et seq.* (1979); 3 K. Davis, Administrative Law Treatise § 20.01 *et seq.* (1958). In this case, however, it seems entirely appropriate to reach the merits of petitioner's claims, since it is clear how the Board would have decided them.

Thus, with respect to petitioner's claim that the applicable INA sections violate equal protection, the Board would have undoubtedly held that *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), precludes the challenge. Furthermore, the Board has repeatedly rejected claims identical to petitioner's second contention—that Luis, who was acknowledged by his father pursuant to Law 985 of the Dominican Republic, was thus legitimated in accordance with Section 101(b)(1)(C) of the INA. *See, e. g., Matter of Reyes*, Interim Decision 2641 (BIA 1978).[3] The Board's consistent interpretation of Law 985 as a practical matter foreclosed petitioner from gaining relief on administrative appeal. Petitioner therefore had no available administrative "remedy" under the law. *See Beltre v. Kiley, supra*; 5 Mezines, Stein, & Gruff, *supra*, §§ 49.02[1] and [4].

■ The Government contends, however, that by not appealing petitioner denied the Board the opportunity to review the evidentiary determination that she, too, was illegitimate. But would the Board have con-

---

to the Immigration and Naturalization Service. 8 U.S.C. § 1103(a). Pursuant to regulation, District Directors of the Immigration and Naturalization Service have been authorized to grant or deny applications for immediate relative and preference classifications under the INA. 8 C.F.R. §§ 103.1(n), 204.1(a).

2. The following is the complete text of the District Director's opinion:

> Section 203(a)(5) of the Immigration and Nationality Act provides for the granting of preference status to qualified immigrants who are brothers and sisters of citizens of the United States. Section 101(b) of the Act provides that any relationship of a child through a father must be as a result of a valid marriage and the child must be legitimate. The facts presented reflect that you and your sister [sic] were born of different mothers. The facts further disclose that you were illegitimate at birth.
>
> The Immigration Laws do not provide for the granting of preference status to brothers and sisters where either or both are illegitimate unless related through a common mother. If the relationship is through a common father, both the petitioner and beneficiary must be the legitimate issue of a valid marriage or have been subsequently legitimated. No evi-

dence has been presented to establish that either you or the beneficiary were [sic] legitimated by the marriage of your natural parents to each other.

> It is concluded that the beneficiary can claim no preference status based on your petition. The petition is therefore denied.

3. Law 985 of the Dominican Republic provides in relevant part:

> Art. 1. Natural filiation established according to law produces the same [legal] effects as legitimate filiation, except for the distinctions made in matters of inheritance.
>
> Art. 2 . . . With respect to the father, it [natural filiation] is established by acknowledgment or by judicial decision. . . .
>
> * * * * * *
>
> Art. 10 . . . If there is legitimate descendance, the natural child or his descendants have the right to one half of the inheritance attributed to a legitimate child or to the descendants of these. . . .

Dominican law also provides for legitimation by marriage of a child's natural parents subsequent to birth. *See Matter of Double-Pena*, 13 I&N Dec. 366 (BIA 1969).

sidered the issue of petitioner's status had she appealed? It is true that full exhaustion of administrative remedies enables an agency "to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972). But since the Board's settled position on Law 985 would have been dispositive of the case, it seems dubious to presume that the Board would nevertheless have focused on an issue with no effect on its ultimate decision. Even had the Board considered the question, it would certainly have affirmed the District Director's conclusions. The possibility that the Board would have remanded to develop a record, 8 C.F.R. § 3.1(d)(2), or would have decided the issue of petitioner's status on the existing record in any way but unfavorably to petitioner, is too remote to require an appeal to the Board in this case.

We therefore turn to the merits. Petitioner claims, first, that the INA, by classifying the offspring of a common mother as "children" regardless of legitimacy, while requiring the legitimation of illegitimate offspring of a common father, violates equal protection. This claim is entitled to no more credence here than it would have received from the Board. In *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), the Supreme Court rejected a virtually identical claim. There, appellants were "three sets of unwed natural fathers and their illegitimate offspring who sought, either as an alien father or an alien child, a special immigration preference by virtue of a relationship to a citizen or resident alien." 430 U.S. at 790, 97 S.Ct. at 1477. They claimed, as petitioner does here, that the distinctions made between mothers with illegitimate children and fathers with illegitimate children violated equal protection.[4]

Petitioner argues that *Fiallo* should be reconsidered in light of *Caban v. Mohammad*, —— U.S. ——, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), in which the Supreme Court held that an unwed father could not be deprived of the right accorded by New York law to an unwed mother to intervene in an adoption proceeding. This more recent decision, petitioner contends, reflects a change of attitude by the Court. Not so. *Fiallo* rests on the extremely limited review permitted by the Constitution of Congress' power to regulate immigration. *Caban* presented the Court with the issue of unequal treatment of men in a context totally free of any expression on immigration by Congress. No basis exists to justify a reevaluation of *Fiallo* by a lower court.

Far more substantial is petitioner's claim that INS has improperly interpreted Section 101(b)(1) of the INA. One basis for denying petitioner relief was that her alleged half-brother, Luis, who was acknowledged under Law 985 of the Dominican Republic, was not properly legitimated. The Board has flatly held that acknowledgment under Law 985 of the Dominican Republic is not legitimation within the meaning of Section 101(b)(1)(B). *See, e. g. Matter of Reyes, supra. See also, Peignand v. Immigration and Naturalization Service*, 440 F.2d 757 (1st Cir. 1971). This conclusion is based on the fact that under Law 985, should the parent die intestate, an acknowledged child can inherit only fifty percent of the share of a child legitimate at birth, even though, in all other respects, a child acknowledged under the Dominican law has the full rights of a legitimate child.[5] The Government, in support of the Board's position, argues that this difference in inheritance rights would increase the likelihood for fraudulent immigration should acknowledgment under Law 985 be treated as legitimation.

---

4. Petitioner's contention made at oral argument that *Fiallo* is distinguishable since it interpreted Section 101(b)(2) and not Section 101(b)(1)(C) is untenable. Section 101(b)(2) refers explicitly to the definitions of "child" contained in Section 101(b)(1) in defining "parent", "father", and "mother". 8 U.S.C. § 1101(b)(2).

5. For the relevant text of Law 985, see note 3, *supra*.

■ The scope of review in this case, is, of course, narrowly circumscribed. Granting preference visas is within the discretion of the Service, and the courts will not reverse its decisions unless there has been an abuse of that discretion. *See, e. g., Nazareno v. Attorney General, supra; Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1102 (9th Cir. 1971); *Ishak v. District Director, Immigration and Naturalization Service, United States Department of Justice,* 432 F.Supp. 624, 625 (N.D.Ill.1977); *Maggiore Bakery, Inc. v. Esperdy,* 238 F.Supp. 374, 375 (S.D.N.Y.1964). An abuse will be found only when there is no evidence to support a decision, or when a decision is based on an improper understanding of the law. *See, e. g., Song Jook Suh v. Rosenberg, supra; Ishak v. District Director, Immigration and Naturalization Service, United States Department of Justice, supra.* Even as to pure questions of law, the Service is entitled to a review tempered by respect for the Service's expertise in interpreting and administering the INA. *See, e. g., Nazareno v. Attorney General, supra,* 512 F.2d at 940.

Despite these precatory standards, the Board's rulings with respect to Law 985 are questionable. It hardly seems likely that persons will more readily lend themselves to fraudulent legitimations because their fraudulently acknowledged "children"

would thereby be entitled to only half the inheritance of a natural child in an intestate distribution.[6] Furthermore, even assuming a significant number of fraudulent "parents" could in theory be affected by a difference in the acknowledged child's right to inherit intestate, what possible basis short of pure speculation could justify the supposition that these individuals would find acceptable the right of children acknowledged under Law 985 to inherit 50% of the statutory share of their natural children?

The Service suggests that its statutory construction should be accepted because of the need for an administratively convenient rule for determining whether a potential immigrant qualifies for a visa preference. The flat rule deeming unacceptable any law providing for anything less than full inheritance rights allegedly provides a "bright line" that the Service can readily apply. The brightness the Service desires here is not, unfortunately, the light of reason.[7]

The rule adopted has no reasonable relation to preventing fraud, and it ignores "the foremost policy underlying the granting of preference visas under our immigration laws, the reunification of families . . ." *Lau v. Kiley,* 563 F.2d 543 (2d Cir. 1977).

■ Despite the strength of her argument against the Service's position with

---

**6.** A person so aware of the consequences of fraudulently legitimating a child as to be affected by intestate inheritance rights, could readily avoid any risk of the legitimated child's inheriting any part of his or her property by cutting off the "child" in a will. Under the Board's view, a legitimation law that allowed an individual to disinherit a legitimated child is entitled to respect, even though it presents far more substantial possibilities of fraud than the aspect of Dominican law that merely reduces the acknowledged child's intestate rights.

**7.** Even assuming that convenience can justify squinting at our usual insistence on the reasoned construction of statutory commands, the Service has muddled the light its flat rule was allegedly intended to provide by creating at least one exception that seems difficult if not impossible to reconcile with its rejection of Dominican acknowledgment. In *Matter of Lee,* Interim Decision 2606 (BIA 1977), the Board held that "recognition" under Korean law was

legitimation within the meaning of Section 101(b) of the INA, even though under Korean law a son born during marriage takes precedence over a recognized son in succeeding to the role of "Head of the Family". The person succeeding to that role enjoys greater inheritance rights. As in Dominican law, all remaining rights and duties of the recognized child and the child born legitimate are the same. The Service's argument distinguishing *Matter of Lee* from the case at bar—that the concept of "Head of the Family" is foreign to our jurisprudence—has no reasoned basis in the policies of the INA. Moreover, the fact that the recognized son will succeed to the position before a legitimately born daughter is also inconsequential, merely showing Korea's relative disdain for the capacities of women. The essential fact is that in both the Dominican and Korean situations, the illegitimately born child has less rights in inheritance than if he had been born in wedlock.

regard to Law 985, petitioner's claim must be dismissed. The District Director·concluded that, not only Luis, but petitioner herself was illegitimate at birth. It is apparent, moreover, that this decision was reached on the basis of discrepancies in the documents submitted by petitioner in support of her application for a preference. Thus, the hearing officer had before him, as required by regulation, extracts (and translations) of plaintiff's birth certificate and the marriage certificate of her purported parents. 8 C.F.R. § 204.2(c)(4). Petitioner relies on the fact that the extract of her birth certificate states that she is the legitimate daughter of Hesikier Mack (the common father) and Virginia Richards, a native of Ingenio Consuelo, Dominican Republic and a domiciliary of San Pedro de Macoris, Dominican Republic. The marriage certificate submitted, however, declares the civil marriage of Esehiah Mack to Elena Octavia Richard; a native of San Pedro de Macoris and a domiciliary of Ingenio Consuelo. Perhaps these differences in names and birth places resulted from administrative error. But they support the District Director's conclusion that petitioner was illegitimate at birth. Indeed, the discrepancy in names appears even more significant in light of the fact that Luis' mother, whom plaintiff concedes is unrelated to her mother, was named Maria Cristina Richards.[8] Petitioner had the burden below of establishing Luis' qualifications for a preference. 8 U.S.C. § 1153(a); *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). She has not explained, or even addressed, the discrepancies in the documents.[9] Therefore, since an

evidentiary basis exists to support the District Director's determination concerning petitioner, he has acted within his discretion.

The Service must be recognized to possess the means for preventing fraud. Yet, as this case shows, the laudable aim of defeating fraudulent schemes need not (and should not) be achieved through the use of rules that may be both unreasonable and inconsistently applied. See note 7, *supra*. The Service has ample power to reject any and all applications for preferences in which the petitioner fails to meet his or her burden of proof. It may even conclude, in my view, after appropriate proceedings and findings, that documentation from certain nations may be so unreliable as to be unworthy of belief. It should use these more discriminate powers to deal with fraud, instead of substituting absolute but unreasonable rules for legislatively mandated standards.

Summary judgment is hereby granted to the defendant. The complaint is hereby dismissed without costs to either party.

SO ORDERED.

---

**8.** Other discrepancies appear in the documents as well. For example, according to the extracts of plaintiff's birth certificate, Luis' birth certificate, and plaintiff's father's death certificate, the common father, Hezikier, Hesekiah, or Hezakiah, depending on the document, was born in 1905, 1910, and 1907 respectively.

**9.** Following oral argument, the court requested the parties to submit written responses to the following questions:

1. Did the District Director determine that both Louis [sic] Mack and Irene Delgado are illegitimate?

2. What evidence in the record suggests that Irene Delgado was born legitimate or illegitimate or was subsequently legitimated?
3. If Irene Delgado was born illegitimate, is there evidence outside the record which suggests that she was acknowledged under Law 985 of the Dominican Republic?

In a letter to the court, plaintiff denied that the District Director had found her to be illegitimate and that any evidence in the record even suggested that she was born illegitimate.