**Ederlina ROGAN and Henry Rogan, Plaintiffs,**

v.

**Janet RENO, U.S. Department of Justice, and Immigration and Naturalization Service, Defendants.**

**No. 98–CV–7442 (ADS).**

United States District Court, E.D. New York.

Oct. 25, 1999.

Wolin & Wolin by Jerold Wolin, Jericho, NY, for Plaintiffs Ederlina Rogan and Henry Rogan.

Zachary W. Carter, United States Attorney by Patrick Shen, Special Assistant U.S. Attorney, Brooklyn, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This immigration matter involves the Defendant Immigration and Naturalization Service's ("INS") denial of the Plaintiff's visa petition to classify their niece, Sarah Elizabeth Ragob, as an immediate relative. Presently before the Court is the Defendants' motion to dismiss the complaint.

### BACKGROUND

On February 23, 1998, the Plaintiffs filed a petition with the INS seeking to classify their adopted daughter, Sarah Elizabeth Ragob ("Sarah"), as an immediate relative, thus allowing her to emigrate from her home country of the Philippine Islands. On May 28, 1998, the INS determined that Sarah was not eligible for designation as an immediate relative pursuant to 8 U.S.C. § 1101(b)(1)(f), because she was not considered "orphaned" by her natural parents as that term is defined in the immigration statute. On June 12, 1998, the Plaintiffs filed an appeal with the Board of Immigration Appeals ("BIA"), and on November 14, 1998, the BIA dismissed the appeal, holding that Sarah was not an orphan. The Plaintiffs then commenced this declaratory judgment action, seeking a declaration that Sarah is an orphan as defined by 8 U.S.C. § 1101(b)(1)(f), and is therefore eligible for classification as an immediate relative.

The Defendants now move to dismiss the Plaintiffs' complaint on two grounds. First, the Defendants allege that a 1996 Congressional statute, 8 U.S.C. § 1252(g) deprives this Court of subject matter jurisdiction to hear the case. Second, the government contends that decision of the INS on Sarah's status was not arbitrary or capricious.

The complaint alleges that Sarah was born on October 29, 1997 in the Philippine

Islands to a woman named Zanaida Creado Rogob, with the birth certificate listing the father as "unknown." Plaintiff Ederlina Rogan, the sister of Zanaida, was present at the birth and Sarah lived with her, away from Zanaida for six months following the birth. Thereafter, the Plaintiffs petitioned a Philippine court to adopt Sarah, and such petition was granted, with the consent of Zanaida and without objection by the natural father, on February 16, 1998. Sarah currently lives with her grandmother in Leyte City, a 24 hour drive from Zanaida.

The post-investigation findings of the INS Officer in Charge in the Philippines, which were part of the record before the BIA and attached as an exhibit to the complaint, shed additional light on Sarah's situation. The INS found that Sarah's natural father was a man named Arnel Sorilla, and that he and Zanaida, although not legally married, live together as husband and wife. Arnel is employed by a security and investigation agency, and supports three other children with Zanaida in a lifestyle considered "well-off" by local standards. Zanaida admitted to the investigating officer that the decision to list the father as "unknown" on the birth certificate was made by Plaintiff Ederlina, at the suggestion of her lawyer to ease the immigration process.

## DISCUSSION

■ The Defendants argue that this Court lacks subject matter jurisdiction to decide this case by virtue of 8 U.S.C. § 1252. That section, entitled "Judicial Review of Orders of Removal," contains sections restricting judicial review of actions by the Attorney General. In this regard, the Defendants point to § 1252(g), which states

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or

execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Several courts have held that the revocation of subject matter jurisdiction in 8 U.S.C. § 1252(g) applies only to removal proceedings, in which the INS attempts to deport or exclude an inadmissible alien. *Burger v. McElroy*, 1999 WL 203353 at n. 4 (S.D.N.Y.1999) *citing Shanti, Inc. v. Reno*, 36 F.Supp.2d 1151 (D.Minn.1999) *and Dominance Industries v. INS*, 1998 WL 874904 (N.D.Tex.1998). This Court finds the logic in these cases to be sound. The title and content of § 1252 repeatedly refer to removal proceedings, and the section makes no mention of 8 U.S.C. § 1154, the procedure which the Plaintiffs invoked to obtain immediate relative status for Sarah. Therefore, the Court finds that § 1252(g) does not apply in cases such as this one, where the relief requested is simply re-classification of a petitioner's visa status, not removal or exclusion of an immigrant.

■ The Court now turns to the Defendants' second argument: that the decision by the INS that Sarah was not an "orphan" was not an abuse of discretion as a matter of law. An INS determination denying "immediate relative" status is within the broad discretion of the INS and "courts will not reverse its decision unless there has been an abuse of discretion." *Vazquez v. U.S. Immigration and Naturalization Serv.*, 1990 WL 156158 (E.D.N.Y.1990) *citing Delgado v. Immigration and Naturalization Serv.*, 473 F.Supp. 1343, 1348 (S.D.N.Y.1979); *see also Sidhu v. Jenifer*, 104 F.3d 361 (table), 1996 WL 733133 (6th Cir.1996). The court will not find an abuse of discretion unless the BIA's decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis, such as an invidious discrimination against a particular race or group." *Douglas v. INS*, 28 F.3d 241, 243 (2d Cir.1994). The Plaintiffs' complaint does not dispute the facts as found by the

INS investigator in the Philippines regarding Sarah's family situation. Therefore, if the BIA's decision is an "abuse of discretion," it must be because the BIA's decision is a departure from established policies or a mis-application of the INS regulations.

The INS determined that Sarah was not eligible for a re-classification on the grounds that she was not an "orphan" as defined by the law. A child becomes an "orphan" under 8 U.S.C. § 1101(b)(1)(f)

because of the death or disappearance of, abandonment or desertion by, or separation or loss from, both parents or for whom the sole or surviving parent is incapable of providing the proper care and has in writing irrevocably released the child for emigration and adoption.

The Plaintiffs argue that Sarah fells within this definition under both the "abandoned" and "sole or surviving parent" categories.

### A. Whether Sarah was "abandoned" by both parents

"Abandonment," as used in 8 U.S.C. § 1101(b)(1)(f), occurs where

The parents have wilfully forsaken all parental rights, obligations, and claims to the child ... without intending to transfer, or without transferring, these rights to any specific person(s)... A relinquishment or release by the parents to the prospective adoptive parents or for a specific adoption does not constitute abandonment. Similarly, the relinquishment or release of the child by the parents to a third party for custodial care in anticipation of, or preparation for, adoption does not constitute abandonment....

8 C.F.R. § 204.3(b).

■ Under the facts alleged in the complaint, the decision by the INS that Sarah was not "abandoned," as that word is defined in the statute, was not an abuse of discretion. Under the definition of "abandonment," Zanaida's relinquishment of parental rights in Sarah had to occur independently of and prior to Ederlina's petition to adopt her. The language of 8

C.F.R. § 204.3(b) is clear: "release by the parents to the prospective adoptive parents ... does not constitute abandonment." *Accord Sidhu v. Jenifer, supra.,* 1996 WL 733133, 104 F.3d 361 ("since even the Sidhu's concede that Gurpreet's adoption was orchestrated, the Service did not misconstrue the facts in determining that Gurpreet was not abandoned."). The Plaintiffs do not contend that Zanaida "abandoned" Sarah before Ederlina petitioned for adoption; rather, the Plaintiffs allege that Zanaida "consented" to the adoption, a consent that would have been unnecessary if she had truly "abandoned" Sarah before that time. Moreover, review of the order of the Philippine court indicates that Ederlina filed her petition to adopt Sarah, with the consent of Zanaida, a mere 15 days after Sarah was born, further casting doubt on the proposition that Zanaida could have abandoned Sarah prior to that time.

On this basis, the Court finds that the BIA properly exercised its discretion to find, under the facts presented, that Sarah was not "abandoned" by her natural parents.

### B. Whether Sarah was a child of a "sole parent" who was "incapable of providing proper care."

■ Nevertheless, the Plaintiffs could also demonstrate that Sarah was an "orphan" under the statute by showing that "the sole or surviving parent is incapable of providing the proper care and has in writing irrevocably released the child for emigration and adoption." 8 U.S.C. § 1101(b)(1)(f).

### (i) Whether Zanaida is a "sole parent"

Under 8 U.S.C. § 1101(b)(2), a child's natural father is not considered a "parent" if the father has "disappeared or abandoned or deserted the child ...." The INS regulations interpreting this statutory section deviate from the above language somewhat, defining a child as having a "sole parent" where "her father has sev-

ered all parental ties, rights, duties, and obligations to the child ...." 8 C.F.R. § 204.3(b).

The record before the INS indicated that Sarah's biological father shared the same house with her mother and Sarah's siblings, and was providing ample financial support to all of them. In addition, Sarah's mother informed the INS investigator that Sarah's father was listed as "unknown" only to ease Sarah's adoption and emigration. Under these facts as alleged in the complaint, the Court finds that Sarah's father has not "disappeared," "abandoned," or "deserted" Sarah. The INS regulations do not define what constitutes "severing all parental ties," but since the statute uses the term "abandoned," the definition of "abandonment" in 8 C.F.R. § 204.3(b) is helpful in interpreting it. The INS definition of abandonment specifically excludes relinquishment of parental rights made pursuant to consensual adoptions. 8 C.F.R. § 204.3(b). It is logical to interpret the statutory use of the expression "disappeared, abandoned, or deserted" consistently with the definition of "abandoned" used in the INS regulations. Both definitions are means to the same end, namely, determining whether the child is an "orphan."

Here, the Plaintiffs argue that Sarah's natural father's parental rights were severed when Sarah was adopted without objection by him. However, since the statute requires that Sarah's natural father "abandon" her before she can be considered to have a "sole parent," and because Sarah's parents turned her over to the Plaintiffs in anticipation of them adopting her, the Plaintiffs cannot show that Sarah's father's relinquishment of his parental rights amounted to "abandonment" under 8 U.S.C. § 1101(b)(2).

Thus, Sarah's father has not "severed all parental rights" to her in the manner contemplated by the statute. Therefore, the Plaintiffs cannot rely upon the "sole parent" test to prove that Sarah is an "orphan" under 8 U.S.C. § 1101(b)(1)(f).

### (ii) Whether Zanaida is "incapable of providing proper care"

Even if Sarah's father's acts were sufficient to constitute relinquishment of his parental rights in her, Sarah still fails to fit the definition of "orphan" under the "sole parent" test in 8 U.S.C. § 1101(b)(1)(f) since there is no evidence in the record before the BIA that Sarah's mother is "incapable of providing proper care" for Sarah. A sole parent is "incapable of providing proper care" where the parent "is unable to provide for the child's basic needs, consistent with the local standards." 8 C.F.R. § 204.3(b). The record before the BIA reflects that Sarah's mother, although unemployed, enjoys an "above-average" standard of living because of Sarah's father's employment. Nothing in the definition suggests that the child's "sole parent" provide for the child's needs using only money earned by the parent. Rather, the regulation merely seeks to inquire whether the child's basic needs are being met without inquiring who is providing for them.

"Under this definition, because the record before the BIA shows that Zanaida is capable of providing proper care," Sarah cannot be considered an "orphan" under 8 U.S.C. § 1101(b)(1)(f), even if Sarah's mother otherwise meets the definition of "sole parent."

### *CONCLUSION*

In sum, the Court finds that the decision made by the BIA is a reasonable application of the immigration statute, INS regulations, and past precedent to the facts before it. Further, the Plaintiffs' complaint fails to allege any facts that, if taken as true, would demonstrate that the BIA's decision was an abuse of discretion. The INS decision that Sarah was not an "orphan" has a rational basis and was not an abuse of discretion as a matter of law. Accordingly, the Government's motion to dismiss the complaint is GRANTED and

the complaint is dismissed. The Clerk is directed to close the case.

**SO ORDERED.**