Domingo Antonio DE LOS SANTOS,
Plaintiff-Appellant,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Defendant-Appel-
lee.

No. 847, Docket 81–6258.

United States Court of Appeals,
Second Circuit.

Argued April 5, 1982.

Decided Sept. 30, 1982.

Before KEARSE and PIERCE, Circuit Judges, and LEVAL,\* District Judge.

KEARSE, Circuit Judge:

Plaintiff Domingo Antonio de los Santos ("Domingo"), a citizen of the Dominican Republic and a lawful permanent resident of the United States, appeals from a final judgment [1] of the United States District Court for the Southern District of New York, Robert J. Ward, *Judge,* dismissing his complaint seeking reversal of a ruling by defendant Immigration and Naturalization Service ("INS") that denied preferential immigration status for Enmanuel de los Santos ("Enmanuel") as Domingo's son under §§ 101(b)(1)(C) and 203(a)(2) of the Immigration and Nationality Act ("Act"), 8 U.S.C. §§ 1101(b)(1)(C), 1153(a)(2) (1976). Section 203(a)(2) grants preferential status to, *inter alios,* the legitimate and legitimated children of lawful permanent residents of the United States. Enmanuel, a citizen and resident of the Dominican Republic, was born in 1957 out of wedlock. On the basis of undisputed facts, the district court concluded that Enmanuel had not been legitimated within the meaning of § 101(b)(1)(C) of the Act and granted summary judgment dismissing Domingo's complaint. We affirm substantially for the reasons stated in the opinion of the district court, reported at 525 F.Supp. 655.

Antonio C. Martinez, New York City, for plaintiff-appellant.

Thomas H. Belote, Sp. Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty. for the S. D. of New York, Peter C. Salerno, Asst. U. S. Atty., New York City, on the brief), for defendant-appellee.

\* The Honorable Pierre N. Leval, of the United States District Court for the Southern District of New York, sitting by designation.

1. By the terms of his notice of appeal Domingo appealed from the order of the district court dated October 28, 1981, granting defendant's motion for summary judgment dismissing his complaint. A final judgment embodying the court's October 28 order having been entered in the district court, we treat the appeal as having been properly taken from the judgment.

## BACKGROUND

Under the complex statutory scheme governing the admission of aliens seeking to immigrate to the United States,[2] one of the groups given immigration priority is composed of "the spouses, unmarried sons or unmarried daughters of an alien lawfully

2. In general, the Act imposes restrictions on the total number of immigrant visas that may be issued annually, on the number of aliens born in the Western Hemisphere who may enter, and on the number of visas issuable to natives of any single foreign state, 8 U.S.C. §§ 1151(a), 1152, and establishes a six-tier preference system within this overall scheme, 8 U.S.C. § 1152(e).

admitted for permanent residence." 8 U.S.C. § 1153(a)(2). Although the Act contains no definition of "son" or "daughter," these terms are construed to mean that the prospective immigrant must be the "child" of the permanent resident alien. *See, e.g., Lau v. Kiley,* 563 F.2d 543, 545 (2d Cir. 1977). The statutory definition of "child" includes certain illegitimate offspring. Section 101(b)(1)(C) of the Act provides that an individual born out of wedlock is a "child" if he or she has been

> legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

8 U.S.C. § 1101(b)(1)(C).[3] INS has interpreted the word "legitimated" to refer to a child born out of wedlock who has been accorded legal rights that are identical to those enjoyed by a child born in wedlock. *See, e.g., Matter of Reyes,* Interim Decision No. 2822 (BIA 1980); *Matter of Clahar,* Interim Decision No. 2643, 16 I&N 484 (BIA 1978); *Matter of Remy,* Interim Decision No. 2160, 14 I&N 183 (BIA 1972).[4]

The law of the Dominican Republic provides two means by which the illegitimate status of a child born out of wedlock may be altered. First, in a process called "legitimate filiation," the child may be legitimated by the subsequent marriage of his parents if they have acknowledged the child prior to or in the act of their marriage:

> Children born out of wedlock who are not the offspring of incestuous or adulterous unions, may be legitimated by the subsequent marriage of their parents in the cases where they have legally acknowledged them prior to or in the act of their marriage.

Dominican Civil Code [DCC] art. 331. DCC art. 333 provides that children legitimated in this fashion "shall enjoy the same rights and benefits of legitimate children." Second, an illegitimate child may be "naturally filiated":

> With respect to the mother a natural filiation is established by the sole fact of birth.
>
> With respect to the father, it is established by acknowledgment or by judicial decision.

Law 985 of Aug. 1, 1945, art. 2. However, Law 985 art. 1 provides as follows:

> Natural filiation established pursuant to the provisions of the law produces the same effects as legitimate filiation *with the exception of the distinction made in matters concerning successions.*

(Emphasis added.) The exception referred to provides that in the event the parent also has a legitimate child or children and dies intestate, the naturally filiated child will inherit only one half the share attributable to a legitimate child. Law 985 art. 10.

In the present case, Domingo and Enmanuel's mother have never been married to each other, and Domingo does not contend that Enmanuel has been legitimated under DCC art. 331. Rather, he asserts that he "acknowledged" Enmanuel eight days after Enmanuel was born, thereby naturally filiating Enmanuel under Law 985 art. 1, and that Enmanuel was thus legitimated under Dominican law for purposes of the United States immigration laws.

INS rejected Domingo's petition, concluding, as it had previously in *Matter of Reyes, supra,* that natural filiation under Dominican law does not establish rights identical to those enjoyed by legitimate children, and hence a "naturally filiated" Dominican child cannot be deemed "legitimated" within the meaning of § 101(b)(1)(C) of the Act. Domingo challenges here, as he did in the district court, INS's interpretation of legitimation as unreasonable and unduly narrow.

---

**3.** Section 101(b)(1) restricts the term "child" to persons under 21 years of age. Enmanuel was under the age of 21 when Domingo filed his petition with INS.

**4.** In *Matter of Lee,* Interim Decision No. 2606, 16 I & N 305 (BIA 1977), INS gave a contrary interpretation; but it overruled *Lee* in *Matter of Reyes, supra.*

## DISCUSSION

We affirm the judgment dismissing Domingo's complaint substantially for the reasons given in Judge Ward's thorough opinion, reported at 525 F.Supp. 655, and add only the following observations.

First, there is no serious question of Dominican law that is unresolved in any material respect.[5] The district court implicitly construed Dominican law as according to children naturally filiated under Law 985 rights that are less extensive than those of legitimate children and children legitimated under DCC art. 331. This determination, which we review as a question of law, Fed. R.Civ.P. 44.1, was eminently correct. Domingo recognizes that under Dominican law naturally filiated children do not enjoy inheritance rights as extensive as those of legitimate children. The only serious question he poses is whether the naturally filiated child's lesser right of inheritance is a permissible basis for INS's refusal to deem such a child legitimated within the meaning of the immigration laws.

■ As to the matter of the correct interpretation of § 101(b)(1)(C), while this too is a question of law subject to full review by the appellate court, *Tovar v. INS,* 612 F.2d 794, 797 (3d Cir. 1980), in general we must give deference to the construction accorded to a statute by the agency charged with its administration. *See, e.g., North Haven Board of Education v. Bell,* —— U.S. ——, 102 S.Ct. 1912, 1918 n.12, 72 L.Ed.2d 299 (1982), *aff'g North Haven Board of Education v. Hufstedler,* 629 F.2d 773, 777 (2d Cir. 1980); *United States v. Rutherford,* 442 U.S. 544, 553–54, 99 S.Ct. 2470, 2475–76, 61 L.Ed.2d 68 (1979). Thus, if INS's interpretation is reasonable, in that it is consistent with the statutory language, legislative history, and purpose of the statute, we will not invalidate it.

■ We agree with the district court that INS's interpretation of "legitimated" as requiring the acquisition of rights coextensive with those of a legitimate child is consistent with the language of the Act. The plain meaning of the word is discussed in greater detail in the district court's opinion, 525 F.Supp. at 661, and need not be explored further here. The district court also reviewed at length the legislative history of the Act and of related statutes, *id.* at 663–68, to determine whether INS's interpretation is consistent with Congress's intent. Although the legislative history is not dispositive, we see in it no indication that Congress intended the word "legitimated" to denote the acquisition of fewer rights than those enjoyed by a legitimate son or daughter. Accordingly, the history, to the extent that it sheds light on this question, supports the view that INS's interpretation is not inconsistent with Congress's intent.

The closest question is whether INS's interpretation, as applied in the present case, is consistent with the purpose of the statutory scheme. Immigration preference categories were created as a means of allocating visas when the demand for them exceeds the number lawfully available. *See* 8 U.S.C. § 1152. In general, insofar as is pertinent here, the Act grants preferential status to close relatives of United States citizens and permanent residents in order to facilitate the reunification of families. *See Lau v. Kiley, supra,* 563 F.2d at 545; H.R. Rep.No.1365, 82d Cong., 2d Sess. 2780 (1952), *reprinted in* 1952 *U.S.Code Cong. & Ad.News* 1653, 1680.

INS contends that since the number of available visas is limited, the goal of family reunification requires that the Act be strictly interpreted in order to minimize the number of successful fraudulent claims. INS's narrow interpretation is thus based on the belief that a claimant will be less likely to claim as his child a person with whom he does not have a bona fide parent/child relationship if he must confer full filial rights on that person than if he may

---

5. Domingo asserts that the district court left unanswered a number of basic questions. We find no merit in this contention. To the extent that the questions listed by Domingo were material to the proceedings before the district court, they were answered, either explicitly or implicitly.

successfully assert such a claim while conferring fewer rights. We think this belief farfetched as it is applied to the provisions of Dominican law at issue here. Here the difference between the rights of naturally filiated children and legitimate children is slight: if the parent of a naturally filiated child dies intestate, and if there are legitimate children, the naturally filiated child will inherit only half the share attributable to a legitimate child. It hardly seems likely that a rule based solely on such a small difference—especially one that disappears if the parent dies testate or without legitimate children—would have any efficacy in deterring fraud. *See, e.g., Reyes v. INS,* 478 F.Supp. 63, 66 (E.D.N.Y.1979); *Delgado v. INS,* 473 F.Supp. 1343, 1348 (S.D.N.Y. 1979). INS's interpretation of "legitimated," however, is a general one requiring complete identity of rights, not one focusing solely on rights of inheritance. Further, the rule is designed for worldwide application; it has not been fashioned with reference to particular distinctions drawn by the laws of any one country. In the context of rights such as financial support and use of the family name, and indeed in the context of other differences in rights of inheritance, INS's interpretation may well have the effect of reducing fraud.

It is not the province of the courts to insist that INS's interpretations of the Act result in the perfect immigration scheme, or even that they be the best interpretations possible. Rather INS is given a fair amount of latitude to exercise its judgment as to what interpretations will best effectuate the goals of the Act. *See Unemployment Compensation Comm'n v. Aragon,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946); *Nazareno v. Attorney General,* 168 D.C.App. 22, 512 F.2d 936, 940, *cert. denied,* 423 U.S. 832, 96 S.Ct. 53, 46 L.Ed.2d 49 (1975). Since INS's strict interpretation is consistent with the language and history of the Act and is, as a general matter, reasonably calculated to serve the purposes of the Act, it is entitled to deference, and we will not invalidate it because in the present instance its usefulness may be tenuous.

## CONCLUSION

The judgment of the district court is affirmed.