**ELATOS RESTAURANT CORP., d/b/a Corner Lunch, Plaintiff,**

v.

**Charles C. SAVA, District Director, Immigration & Naturalization Service, Defendant.**

No. 84 Civ. 8406(CES).

United States District Court,
S.D. New York.

March 18, 1986.

Nicholas Paul Altomerianos, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., New York City (Jorge Guttlein, Asst. U.S. Atty., of counsel), for defendant.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff Elatos Restaurant d/b/a Corner Lunch ("plaintiff" or "petitioner") brings this action against defendant Charles C. Sava, New York District Director of the Immigration & Naturalization Service ("INS"), seeking review of a final decision by INS Regional Commissioner Stanley E. McKinley ("Regional Commissioner") that denied plaintiff's petition to grant George Milatos ("beneficiary") preference status for the issuance of an immigrant visa on the basis of his profession or occupation under the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(6). Plaintiff moves for summary judgment pursuant to Fed.R. Civ.P. 56. Defendant cross-moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). We deny plaintiff's motion and grant defendant's cross-motion.

## BACKGROUND

On July 23, 1981, plaintiff, a New York corporation doing business as a restaurant in Queens, New York, under the trade name of Corner Lunch, filed an application for alien employment certification with the

United States Department of Labor ("DOL"). In its application, plaintiff stated that it needed a Greek specialty cook with four years' experience. Plaintiff named George Milatos, a resident of Nassau, Bahamas, as the beneficiary and indicated that it would employ him full-time at a weekly salary of $230. In support of plaintiff's application, the beneficiary indicated that he had worked for Nassau Airport Caterers Ltd. in the Bahamas from 1963 until June 1978, preparing and cooking specified Oriental and Greek dishes. An unsworn letter dated October 31, 1980 from the General Manager of Nassau Airport Caterers, George Skandaliarius, verified the beneficiary's employment "as a cook with a wide knowledge of international cuisine."

Following the DOL's certification and approval of the application, plaintiff petitioned the INS on April 8, 1982 to classify the beneficiary's status as eligible for a sixth preference visa. The petition, which was accompanied by the approved labor certification including the October 31, 1980 letter from Skandaliarius, indicated that plaintiff had a net annual income of $95,000. On June 17, 1982, the District Director denied the petition on the ground that plaintiff had failed to establish that the beneficiary had "any experience cooking primarily Greek and Oriental foods, as required by the labor certification."

A June 30, 1982 appeal to the Regional Commissioner was dismissed on March 11, 1983 because of plaintiff's failure to provide documentation of the beneficiary's experience. Plaintiff requested reconsideration of this decision and enclosed an August 16, 1982 letter from Skandaliarius stating that the beneficiary had been employed by his company, El Toro Restaurant, in the Bahamas as a Greek specialty cook for the past five years. In response, the Regional Commissioner withdrew his earlier decision and remanded the case to the District Director for a new decision.

On July 22, 1983, the District Director denied plaintiff's petition a second time. Apart from plaintiff's failure to submit ver-

ification of the alien's qualifications in the proper affidavit form, *see* 8 C.F.R. § 204.-2(i), the District Director found that plaintiff had also failed to offer evidence sufficient to establish that the beneficiary had the requisite experience required by the DOL certification or that plaintiff could meet the proffered wage. He certified his decision for review to the Regional Commissioner. Plaintiff, who had been proceeding pro se, retained counsel in March 1984.

By letter dated July 12, 1984, the Regional Commissioner advised plaintiff that it had fifteen days to supplement the record with documentary evidence in support of its appeal. Plaintiff responded by submitting two affidavits and its 1982 corporate income tax return. The affidavit submitted from Skandaliarius stated that he was the general manager of Nassau Airport Caterers and owner of El Toro Restaurant from 1974 to 1982, and that the beneficiary had in fact been employed by El Toro for four years rather than five years as previously stated in his August 16, 1982 letter. The second affidavit was submitted from Bernard Murphy, who stated that he was the Head Chef at International Airport Caterers, that he had worked with the beneficiary from July 1965 until June 1978, and that the beneficiary was "a cook of international cuisine specialising [sic] in Greek Food." Plaintiff's tax return reflected a net taxable income of $5,717.49.

After consideration of the supplemented record, the Regional Commissioner affirmed the decision of the District Director and dismissed plaintiff's appeal on September 28, 1984. The Regional Commissioner found that, since the proffered wage was twice plaintiff's taxable income, plaintiff had failed to establish its ability to pay the beneficiary. He also found that the conflicting statements in the record failed to establish the required experience.

In commencing the present action on November 21, 1984, plaintiff contends that the denial of its petition is unsupported by reasonable, probative, and substantial evidence and constitutes an abuse of discre-

tion by the INS. Plaintiff further contends that the denial discriminates against plaintiff as a small business in violation of the due process clause.

## DISCUSSION

■ Under the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1153, the INS is accorded broad discretion to grant or deny visa preference classifications. *See North American Industries, Inc. v. Feldman,* 722 F.2d 893, 898 (1st Cir.1983); *Mila v. District Director,* 678 F.2d 123, 125 (10th Cir.1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 952 (1983); *Delgado v. INS,* 473 F.Supp. 1343, 1348 (S.D. N.Y.1979). As a result, review of such decisions by the district courts is limited to determining from the administrative record whether the INS abused its discretion. *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305, 1308 (9th Cir. 1984). The reviewing court may find abuse of discretion if an INS decision is "'[un]supported by reasonable, substantial ... evidence on the record considered as a whole.'" *De Los Santos v. INS,* 525 F.Supp. 655, 660 (S.D.N.Y.1981) (quoting *Bastidas v. INS,* 609 F.2d 101, 104 (3d Cir.1979)), *aff'd,* 690 F.2d 56 (2d Cir.1982). *See also Wong Wing Hang v. INS,* 360 F.2d 715, 717 (2d Cir.1966).

■ In reviewing INS decisions, however, the court must bear in mind two considerations. First, "control over matters of immigration is a sovereign prerogative." *Landon v. Plasencia,* 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982). While the court "must not yield to the temptation to rubberstamp all decisions," *Rosedale & Linden Park Co. v. Smith,* 595 F.Supp. 829, 834 (D.D.C.1984), it must nonetheless give deference to the INS's interpretation of the statute that it is charged by law with administering and enforcing. *See De Los Santos,* 690 F.2d 56, 59–60 (2d Cir.1982); *Nazareno v. Attorney General,* 512 F.2d 936, 939–40 (D.C. Cir.),

*cert. denied,* 423 U.S. 832, 96 S.Ct. 53, 46 L.Ed.2d 49 (1975). In this regard, INS interpretations need not be the best possible interpretations, and the court should not overturn a decision "simply because it may prefer another interpretation of the statute," *INS v. Jong Ha Wang,* 450 U.S. 139, 144, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981). *See De Los Santos,* 690 F.2d at 60. It is sufficient if the INS's interpretation is consistent with the language of the Act and is reasonably calculated to serve its purposes. *Id.*

■ Second, the plaintiff and beneficiary bear the burden of establishing the beneficiary's eligibility for the preference benefit. *See* 8 U.S.C. § 1154; *In re Brantigan,* 11 I. & N. Dec. 493, 495 (B.I.A.1966). In the case of petitions for sixth preference visa classifications, it is undisputed that this burden encompasses two requirements. Plaintiff must demonstrate its financial ability to meet the wage requirements of the certified job offer. *See, e.g., Tongatapu Woodcraft Hawaii, Ltd.,* 736 F.2d at 1309–10; *In re Great Wall,* 16 I. & N. Dec. 142, 145 (A.R.C.1977); *In re Sonegawa,* 12 I. & N. Dec. 612, 614 (A.R.C.1967). Plaintiff must also demonstrate that the beneficiary meets the minimum requirements to perform the job satisfactorily. *See, e.g., London Typographers, Inc. v. Sava,* 628 F.Supp. 570 (S.D.N.Y.1986); *In re Great Wall,* 16 I. & N. Dec. at 145. Plaintiff contends that the INS abused its discretion in concluding that plaintiff had failed to carry its burden on either of these requirements. Given the narrow scope of our review and the administrative record before us, we cannot agree.

### A. *Petitioner's Financial Viability*

■ As sole evidence of its ability to pay the proffered wage, plaintiff submitted to the Regional Commissioner its 1982 corporate income tax return, which reflected a gross income of $109,962 and a net taxable income of $5,717.[1] In denying plaintiff's

---

1. While plaintiff indicated in its petition that it had a net annual income of $95,000, it submitted no evidence to the District Director to

support this statement or its ability otherwise to pay the proffered wage. Therefore, its 1982

petition, the Regional Commissioner concluded that since the proffered annual wage of $11,960 was more than twice plaintiff's taxable income, plaintiff had failed to carry its burden of proof. Plaintiff argues that the figure for taxable income on its tax return did not accurately reflect its net profit and that the Regional Commissioner should have included in that figure a $6,672 deduction that plaintiff had taken in depreciation expenses. Plaintiff further argues that the Regional Commissioner's conclusion impugns plaintiff's honesty and good faith and reflects a purely mechanical approach to evaluating plaintiff's petition that is inconsistent with the policy interests underlying the Act. We reject plaintiff's arguments.

 Reliance on income tax returns as a basis for determining a petitioner's ability to pay the proffered wage is well-established by both INS and judicial precedent. *See, e.g., Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305 (9th Cir. 1984); *In re Sonegawa,* 12 I. & N. Dec. 612 (A.R.C.1967). Precedent also establishes that, in weighing a tax return as evidence of a prospective employer's financial viability, the INS may reasonably rely on net taxable income as reported on the employer's return. *See Ubeda v. Palmer,* 539 F.Supp. 647, 649–50 (N.D.Ill.1982), *aff'd,* 703 F.2d 571 (1983).

 While plaintiff would have us distinguish *Ubeda* on the ground that the INS rested its determination in that case on the net taxable income of an *individual* rather than a corporation, we reject the distinction. In doing so, we remind plaintiff that it carries the burden of proof here. Protestations of honesty and good faith in filing the petition do not constitute proof. To the extent its tax return was open to differing interpretations with respect to plaintiff's actual ability to pay the proffered wage,

the onus was on plaintiff to submit more conclusive evidence such as cash flow data or certified financial statements to clarify the income figures reflected on the return and thus apprise the INS more definitively of its financial position. *Cf. In re Sonegawa,* 12 I. & N. Dec. at 614–15 (income tax return supplemented by financial statement and other evidence of future viability). In this regard, we note that plaintiff provided the Regional Commissioner with no evidence of financial viability beyond the tax return and sought no opportunity to reopen the case, *see* 8 C.F.R. § 103.5, so that it might do so. Accordingly, we cannot say that the INS abused its discretion in denying plaintiff's petition on this ground.

### B. *Beneficiary's Qualifications*

The Regional Commissioner also upheld the finding of the District Director that plaintiff had failed to establish that the beneficiary had four years' experience cooking Greek and Oriental dishes as specified in the DOL certification.[2] He concluded that "a letter from a former employer" failed to clarify prior errors in the record, and that "[a]bsent more convincing records such as payroll and tax records from the former employer, the conflicting statements do not establish the required experience." Plaintiff contends that defendant was in possession of sufficient information to demonstrate more than fifteen years of requisite experience. While we find this aspect of the INS decision somewhat more problematic, we are unwilling to conclude that it constituted an abuse of discretion.

 In our view, the INS was justified in discrediting, "absent more convincing records," the conflicting evidence with respect to the beneficiary's experience as a cook "specializing in Greek cuisine" at El Toro Restaurant. The August 16, 1982

---

corporate tax return was reviewed *de novo* by the Regional Commissioner.

**2.** The application certified by the DOL required the beneficiary to have four years of experience "[p]reparing and cooking Oriental and Greek dishes, dolmades, mousaka, pastichio, souvlaki,

gyro, making Greek salads, bake Greek and Oriental pastries, kataifi, baklava and others." It described the equipment that the beneficiary must operate as "knives, grinders, ovens, stoves, machettes [sic], rolling pins."

letter from Skandaliarius, which was submitted on plaintiff's first appeal and prompted the remand to the District Director, specified a period of employment at El Toro Restaurant that overlapped with the beneficiary's purported period of employment at Nassau Airport Caterers Ltd. While the February 28, 1984 affidavit from Skandaliarius corrected this miscalculation in dates for purposes of plaintiff's second appeal, we find it curious, as did the District Director and presumably the Regional Commissioner, that the beneficiary made no mention of his employment at El Toro in his statement of experience for the DOL certification. We find it equally curious that Skandaliarius likewise made no mention of plaintiff's employment at El Toro in his earlier October 31, 1980 letter.

■■■ Whether or not the INS credited the available evidence of the beneficiary's employment at El Toro Restaurant, however, that employment alone would not have satisfied the four-year experience requirement set forth in the DOL certification.[3] To satisfy that requirement, the INS had to consider as well the evidence offered in verification of plaintiff's employment by Nassau Airport Caterers. This evidence consisted of the unsworn October 31, 1980 letter from Skandaliarius written in his capacity as General Manager of Nassau Airport Caterers and the February 28, 1984 affidavit from Bernard Murphy, the Head Chef of International Airport Caterers.

Laying aside the discrepancy in the name of the beneficiary's purported employer, both these documents verify a period of employment dating from the mid-1960's to June 1978 that is consistent with the period specified in the beneficiary's own statement of experience. With respect to his actual experience cooking Greek dishes, however, only the Murphy affidavit touches on the beneficiary's qualifications. It describes the beneficiary as "a cook of international cuisine specialising [sic] in

Greek Food [who d]uring the time he was employed at the International Airport Caterers ... was responsible for the preparation of food for 40 Greek members of staff."

Although we cannot discern from the Regional Commissioner's decision the weight that he attached, if any, to this affidavit, we believe that this statement, reasonably construed, leaves open to question whether the beneficiary was a Greek specialty cook for the entire thirteen years covered by the Murphy affidavit or for some shorter unspecified period of time. It also neglects to identify the Greek dishes that the beneficiary specialized in preparing. *See* 8 C.F.R. § 204.2(i) (affidavits attesting to experience must "describe in detail the duties performed by the [beneficiary]"). Given both the ambiguity in the Murphy affidavit and its scant detail, we believe that the INS could reasonably have found that this evidence was also insufficient to establish the requisite experience.

■■■ In challenging the denial of its petition for failure to establish the beneficiary's qualifications, plaintiff also contends that the INS's demand for more definitive documentary evidence, such as wage or tax records, is an "unbelievable burden" that cannot be justified under the Act. INS regulations state, however, that, beyond the specified information normally required in support of a particular petition, "[t]he Service may also require the submission of additional evidence," *see* 8 C.F.R. §§ 103.2(b)(1), 204.2(i), presumably as deemed necessary by the circumstances of a particular case. Based on the record presently before the court, we do not believe that the INS abused its discretion in insisting upon "more convincing records." In this regard, we note that "wage or tax records" were merely cited as examples of the kinds of documents that would have served to clarify the incomplete, conflicting

---

**3.** Since experience is measured as of the filing date of the DOL application, *see* 8 C.F.R. 204.-1(d)(2), which in this case was July 23, 1981, the beneficiary's experience as a Greek specialty cook at El Toro Restaurant, even if credited, would only verify three years of the requisite four-year requirement.

or otherwise ambiguous evidence that plaintiff has submitted to date.

▆ Finally, plaintiff contends that, before acting, the Regional Commissioner should have requested any additional documents that were material to his decision to affirm the District Director's denial of the petition. In support of its contention, plaintiff refers us to an INS regulation designated OI 204.4(d)(1) that states:

> Statement of Qualifications of Alien form which must accompany each third- or sixth-preference petition, contains information concerning the beneficiary and his qualifications and must be supported by documentary evidence of those qualifications. If the beneficiary is clearly unqualified, the petition should be denied. *When examination of the petition indicates that the petition may be approvable if the beneficiary is qualified, but that additional documents are required, the petition shall be returned to the petitioner with a request for those documents before further action is taken.* (Emphasis added.)

Since we have been unable to locate this provision in the Code of Federal Regulations, we assume that it is contained in an agency handbook of uncodified instructions or procedures. Whatever its source, we are unwilling to find abuse of discretion because of the alleged failure of the Regional Commissioner to comply with this regulation. In view of the INS's finding that plaintiff failed to establish its own financial viability, the petition could not have been approved even if plaintiff had established the beneficiary's qualifications. Furthermore, we note that plaintiff made no effort to reopen the case at the agency level so that it might provide the Regional Commissioner with "more convincing records" and, even now, proposes to offer no more than an unauthenticated menu from El Toro Restaurant.

Accordingly, we decline to find that the INS abused its discretion in denying plaintiff's petition for failure to establish the beneficiary's qualifications for the position.

## C. *Due Process*

▆ In a passing reference, plaintiff contends that denial of its petition by the INS discriminates against plaintiff as a small business in violation of the due process clause. This contention is without merit. Plaintiff cannot demonstrate that it has an "an already acquired" property interest in or that it has "a legitimate claim of entitlement" to the preference visa. *Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972). In any event, since the granting of the petition and the issuance of a visa are within the discretion of the INS, due process is served, as it was here, as long as plaintiff was accorded notice and an opportunity to be heard and the INS did not abuse its discretion. *See id.* at 576 n. 15, 92 S.Ct. at 2708 n. 15.

## CONCLUSION

For the reasons stated, plaintiff's motion is denied and defendant's cross-motion is granted. The complaint is dismissed.

SO ORDERED.