**Ruben Dario ROSARIO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 639, Docket 91–4047.**

United States Court of Appeals, Second Circuit.

Submitted Dec. 11, 1991.

Decided April 27, 1992.

is to ensure that whatever compassionate conditions are written in the law are carefully adhered to, no matter how slim the alien's chances to escape deportation may be. The question before us is whether this petitioner has met the necessary conditions to be eligible to seek that relief. We think in this case the Immigration and Naturalization Service (INS) in finding petitioner statutorily ineligible to seek a waiver has added conditions to eligibility not found in the statute, and consequently has exceeded its delegated authority. Here, the petitioner's ability to secure a waiver may not be promising, but it is the only path open to him. We grant the petition because in our view petitioner satisfies the conditions for eligibility.

Mark T. Kenmore, Buffalo, N.Y. (Gerald P. Seipp, Serotte, Reich & Seipp, of counsel), filed a brief for petitioner.

Diogenes P. Kekatos, New York City, Asst. U.S. Atty. for the Southern District of New York (Otto G. Obermaier, U.S. Atty., Thomas A. Zaccaro, Asst. U.S. Atty. for the Southern District of New York, of counsel), filed a brief for respondent.

Before: FEINBERG, NEWMAN, and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Under the United States immigration laws aliens who abuse their stay here, for example, by committing a crime, are rightfully deported. Recognizing that this disposition, even though deserved, is uniformly harrowing for the alien, Congress provided a method to alleviate this harsh punishment in certain cases. To be eligible to seek such relief, a permanent resident alien must have seven consecutive years of domicile in the United States. If that condition is met, the Attorney General then weighs the merits of the alien's application for relief and, in the exercise of his discretion, decides whether or not to grant relief from an order of deportation.

On this appeal, petitioner asks that we find him eligible to seek relief from an order of deportation. Our task, of course,

## BACKGROUND

Ruben Rosario petitions, pursuant to § 106(a) of the Immigration and Nationality Act of 1952 (Act), 8 U.S.C. § 1105a(a), as amended, for review of the Board of Immigration Appeals (Board or BIA) order dated March 15, 1991 finding him ineligible—because he lacked sufficient time as a United States domiciliary—to apply for a waiver of deportation under § 212(c) of the Act, 8 U.S.C. § 1182(c). The Board upheld a ruling ordering him deported to the Dominican Republic on charges found against him under 8 U.S.C. § 1251(a)(4)(B), recodified as § 1251(a)(2)(A)(iii), and § 1251(a)(11), recodified as § 1251(a)(2)(B)(i), §§ 241(a)(4)(B) and 241(a)(11) of the Act, respectively.

Petitioner, a native and citizen of the Dominican Republic, was born on September 22, 1971 and lawfully acquired permanent resident status in the United States when he landed here on December 3, 1983 at the age of 12. On November 22, 1989 he pled guilty in New York State Supreme Court, New York County, to charges of criminal sale of a controlled substance in the third degree, attempted criminal sale of a controlled substance in the third degree and criminal possession of stolen property in the third degree. He received concurrent sentences of one to three years imprisonment on these convictions. Petitioner

elected to participate in the Lakeview Shock Program, a "bootcamp" rehabilitation center and, as a result of successfully completing the program, obtained early release from state custody.

In July 1990 the INS issued an administrative order charging Rosario as deportable under §§ 241(a)(4)(B) and 241(a)(11) of the Act for having been convicted of an aggravated felony and for having been convicted of a crime relating to a controlled substance, respectively. At an administrative trial held on September 26, 1990 the convictions forming the basis for deportability were admitted by petitioner, and while deportability was conceded on the charge under § 241(a)(11) (controlled substance), deportability on the § 241(a)(4)(B) (aggravated felony) charge was denied.

At the trial petitioner was asked, as is customary, whether he had any application for relief and, in response, moved for § 212(c) relief. Rosario's counsel contended that the domicile of an unemancipated minor—as Rosario was on December 3, 1983—is the domicile of that child's custodial parent. In this case, petitioner asserts that his mother (and therefore he) was domiciled in the United States no later than February 1, 1983. In opposing the motion for relief, the INS argued that though Rosario was a permanent resident, he did not have as of September 26, 1990 the seven years of lawful domicile in the United States required for § 212(c) eligibility. The immigration judge agreed with the INS and ruled that for purposes of § 212(c) physical presence in the United States for seven consecutive years was required. Finding that lawful domicile did not commence until Rosario himself landed in the United States on December 3, 1983 the immigration judge rejected Rosario's bid for § 212(c) relief and ordered that he be deported to the Dominican Republic.

Rosario appealed to the Board of Immigration Appeals renewing his argument concerning the tacking-on of his mother's domicile in this country. On March 15, 1991 the Board dismissed Rosario's appeal, noting that "domicile" for § 212(c) purposes has long entailed physical presence in the United States. The BIA was also of the opinion that the adoption of a common law principle not requiring physical presence for the purpose of establishing domicile would be inconsistent with the purposes of that section.

Appellant filed the instant petition for review, and two days later filed with the Board a motion to reopen his case. By decision dated August 7, 1991 the Board denied the motion to reopen. The instant petition for review seeks a remand for trial so that an immigration judge may decide pursuant to § 212(c) whether to grant petitioner discretionary relief from deportation.

## DISCUSSION

### A. *Section 212(c)*

We turn first to the statute. Section 212(c) provides:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a *lawful unrelinquished domicile of seven consecutive years,* may be admitted in the discretion of the Attorney General ... (emphasis added).

As this provision applies to Rosario, we must determine whether, as of September 26, 1990, he had been "domiciled" in the United States for seven consecutive years and was therefore eligible to seek discretionary relief from deportation. The Board says "no" and if its reading of the statute is entitled to deference that is the end of the matter.

Although the interpretation of an ambiguous statute by the agency charged with its enforcement is ordinarily entitled to great deference, *see, e.g., Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), statutory interpretation is, in the final analysis, a matter for the courts. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984); *De Los Santos v. INS,* 690 F.2d 56, 59 (2d Cir.1982). Consequently, if we conclude that the INS' interpretation is inconsistent with the statute's

language and purpose, deference is inappropriate. *See Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9; *De Los Santos,* 690 F.2d at 59. As we propose to demonstrate in the discussion that follows, such is the case here.

Analysis begins with brief reference to § 212(c)'s applicability, structure, and purpose. We have previously ruled that though the statutory language literally applies only to those permanent resident aliens "who temporarily proceeded abroad voluntarily," it may not be so limited, *see Francis v. INS,* 532 F.2d 268 (2d Cir.1976), holding that on equal protection grounds § 212(c) relief is available to an otherwise qualified alien regardless of whether or not he has traveled abroad. Accordingly, although § 212(c)'s terms limit its application to exclusion proceedings, it is well settled that it also applies to deportation proceedings. *Id.* at 273.

Next, when examining the language of the section, it must be observed that there are two elements in § 212(c): "lawfully admitted for permanent residence," and "lawful unrelinquished domicile of seven consecutive years." These are separate and independent conditions, neither purports to limit or qualify the other. We have therefore rejected the contention that all seven years of domicile must be by a person who has had permanent resident status throughout that time. *See Lok v. INS,* 548 F.2d 37, 41 (2d Cir.1977). It seems plain instead that Congress planned for a permanent resident alien to be eligible for § 212(c) relief, provided that person can meet the domicile condition. This follows, we think, from Congress' two noted and separate conditions which, when established by an alien, clearly demonstrate a measurable attachment to the United States. *See M.A. Hall, Lawful Domicile Under Section 212(c) of the Immigration and Nationality Act,* 47 U.Chi.L.Rev. 771, 775–76 (1980).

Further, we note that § 212(c) of the Immigration and Nationality Act derives from the Seventh Proviso of Section 3 of the Immigration Act of 1917. The Seventh Proviso states that "aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Secretary of Labor, and under such conditions as he may prescribe." The legislative history reveals that this proviso was inserted as a "humane provision to permit the readmission to the United States (under proper safeguards) of aliens who have lived here for a long time and whose exclusion after a temporary absence would result in peculiar or unusual hardship." S.Rep. No. 352, 64th Cong., 1st Sess. 6 (1916) (citations and quotations omitted). Thus, it seems plain that Congress' policy, at least as regards waiver *eligibility,* is tolerant rather than strict, and accordingly does not envision barriers in addition to those already found in § 212(c).

**B.** *Domicile Under the Common Law*

Nothing in the legislative history of the Immigration and Nationality Act of 1952 sheds specific light on Congress' meaning in its use of the word "domicile." *See* H.R.Rep. No. 1365, 82d Cong., 2d Sess., *reprinted in* 1952 U.S.Code Cong. and Admin.News 1653, 1705–06. As it is assumed Congress intends words to have their ordinary meaning, it is appropriate to define domicile in reference to its generally accepted common law meaning if to do so does not defeat the purposes of the statute. *See Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 47, 109 S.Ct. 1597, 1607–08, 104 L.Ed.2d 29 (1989).

In *Holyfield* the Supreme Court was called upon to interpret "domicile" as that term is used in the Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901–1963. That Act provides that tribal courts shall have exclusive jurisdiction over proceedings concerning Indian children domiciled on a reservation. *Id.* § 1911(a). The Court first observed that because the Indian Child Welfare Act was designed to implement a uniform federal policy—the same is true with the Immigration and Nationality Act—domicile was not to be determined according to the law of the forum, but rather required a uniform federal definition. 490 U.S. at 43–47, 109 S.Ct. at 1605–08. It further stated that the fact that a

uniform federal definition is necessary need not prevent courts from drawing on common law principles in fixing the meaning of legislative language. *Id.* at 47, 109 S.Ct. at 1607–08.

■ In examining common law principles it becomes immediately apparent that the INS' interpretation of "domicile," at least as applied to minors, is inconsistent with its traditional common law meaning. The terms resident and domicile, though sometimes synonymous, have different common law meanings. *See* 25 Am.Jur.2d *Domicile* § 4 (1966). Domiciliaries are those who have a fixed, permanent and principal home and to which, whenever absent, they always intend to return. *See id.* at § 1. At the opposite end of the scale are transients, those persons who are just passing through a locality. In between these notions of permanence and transience are residents. Residency means an established abode, for personal or business reasons, permanent for a time. *See Martinez v. Bynum,* 461 U.S. 321, 330–31, 103 S.Ct. 1838, 1843–44, 75 L.Ed.2d 879 (1983). A resident is so determined from the physical fact of that person's living in a particular place. *See* 8 U.S.C. § 1101(a)(33) (defining "residence" as "place of general abode ... without regard to intent"). One may have more than one residence in different parts of this country or the world, but a person may have only one domicile. A person may be a resident of one locality, but be domiciled in another. *See Holyfield,* 490 U.S. at 48, 109 S.Ct. at 1608.

■ A minor's domicile is the same as that of its parents, since most children are presumed not legally capable of forming the requisite intent to establish their own domicile. *Id.* For legitimate children, the rule is usually stated to be that domicile follows the father, *Restatement (Second) Conflict of Laws* § 14(2) (1969), for illegitimate children it follows that of the mother. *Holyfield,* 490 U.S. at 48, 109 S.Ct. at 1608. Hence, it is not illogical that sometimes a child's domicile will be in a place where he or she has never been. *See Restatement* § 14, Comment b. The INS fails to advance any satisfactory reasons as to why "domicile" in § 212(c) should not be understood to convey a similar meaning.

In fact, in the immigration context, where the domicile of a minor alien like Rosario may determine whether he is eligible for relief from deportation, the ameliorative purpose of § 212(c) is better served by permitting a minor to establish domicile through a parent with whom he had a significant relationship during the time in question. This connection with the parent—and, by extension, with this country— evinces the type of bond that the statute was designed to protect from unwarranted severance. We regard the fact that Rosario has lived with his mother in the United States for more than six years after he arrived in this country at age 12 as indicating this relationship existed. If so, he is entitled to claim domicile through her.

It seems clear that the BIA's reading of § 212(c) to require, in effect, seven years of domicile *and* residency is inconsistent with the statutory language, at least insofar as domicile has traditionally been understood in the context of minors. Properly understood, the agency's "long-standing" interpretation of domicile in § 212(c) to require physical presence can apply only to *adults,* for whom actual presence and an intent to indefinitely remain or prior presence and an intent to return are traditional elements of domicile. *See* 25 Am.Jur.2d § 4; *cf. Lok,* 548 F.2d at 40 (refusing to add requirements beyond those explicitly found in § 212(c) before waiver may be sought).

That the INS itself recognizes that domicile is "an entirely different attribute" than residency is evidenced by its opinion in *The Matter of A,* where the BIA held that the domicile of a minor child follows that of the person from whom the domicile of origin was taken. *See* 2 I. & N. Dec. 87, 88–89 (BIA 1944); *see also* 8 U.S.C. § 1101(b)(1)(c) (defining "child" as a "child legitimated under the law of the child's *residence or domicile*") (emphasis added). Consequently, insofar as the agency's interpretation of § 212(c) results in adding to the domicile requirement a residency requirement, which is not included in the language of the

Act, we are unable to uphold it. Our conclusion that the INS' interpretation is unreasonable is supported by the principle that in light of the harshness of deportation, ambiguous deportation provisions should be construed in favor of the alien. *See Costello v. INS*, 376 U.S. 120, 128, 84 S.Ct. 580, 585, 11 L.Ed.2d 559 (1964); *INS v. Cardoza–Fonseca*, 480 U.S. 421, 449, 107 S.Ct. 1207, 1222, 94 L.Ed.2d 434 (1987); *Lok*, 548 F.2d at 39.

The INS asserts finally that the interpretation urged by petitioner would lead to absurd results and cannot therefore accurately reflect Congress' view. In particular, it argues that a minor admitted into the United States might derive lawful domicile from a parent already present for seven years, thereby making that person eligible for § 212(c) relief on the very day of arrival. This, in turn, would frustrate the purpose of § 212(c), "which is to waive grounds of excludability or deportability for aliens who have developed such strong ties to this country that exclusion or deportation would be unjustly harsh." The agency misstates the "purpose" of § 212(c). It is not "to waive grounds of deportability," but rather to provide an *opportunity to seek a waiver* at the discretion of the Attorney General. *See Francis*, 532 F.2d at 272. Section 212(c)'s requirement that an applicant must have been "lawfully admitted for permanent residence" obviates the concern that a minor without any significant connection with the United States might nevertheless be eligible for discretionary relief.

If one qualifies for § 212(c) eligibility despite not having developed family ties in the United States, then the Attorney General can exercise his discretion and not waive deportability. Instead, it is the agency's interpretation that frustrates the legislative scheme because it works to prevent those who *have* developed close ties to the United States (as Rosario) from being able to seek a waiver.

## CONCLUSION

Although we grant the petition for review, it nonetheless appears that Rosario failed to introduce any evidence in the administrative proceeding showing that his mother was a domiciliary of the United States as of February 1, 1983 and that his domicile for purposes of § 212(c) from February 1, 1983 through December 3, 1983 was that of his mother by virtue of his having a significant relationship with her during that time. Of importance for the hearing officer would be Rosario's relationship with his mother on arrival here or the absence or death of his father beforehand. Consequently, the matter must be remanded with directions that if petitioner demonstrates the above two prerequisites, that is his mother's domicile and his significant relationship with her, he must then be considered eligible under § 212(c) to seek a waiver. We of course express no view on how the Attorney General should exercise his broad discretion were the case to proceed that far.

Petition granted and matter remanded for further proceedings consistent with this opinion.