**Kenneth W. REYNOLDS Plaintiff,**

v.

**Andrew WOHL, Hudson Valley Ice Cream, Inc., Mountain Dairies, Inc., Star Dairy, Inc., S & W Ice Cream, Inc., Mountaindale Dairy, Inc., Deerpark Dairies, Inc., Mountainview Dairy, Inc., Trandirect Service, Inc., Glen Dor Products, Inc., Miller Automatic Corp., and Irg Management Corp. Defendants.**

**No. 03 CIV. 2779(SCR).**

United States District Court, S.D. New York.

Aug. 24, 2004.

Daniel Millstone, Riverdale, NY, for Plaintiff.

Steven E. Rosenfeld, Rosenfeld, P.C., New York City, for Defendants.

### MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. *INTRODUCTION:*

On March 23, 2004, this Court conducted an evidentiary hearing (the "Hearing") on the question of whether diversity jurisdiction exists in connection with this matter. At its core, this action is a breach of contract claim governed by New York state law.[1] More particularly, Kenneth W. Reynolds (the "Plaintiff") was hired by Andrew Wohl, Hudson Valley Ice Cream, Inc., Mountain Dairies, Inc., Star Dairy, Inc., S & W Ice Cream, Inc., Mountaindale Dairy, Inc., Deerpark Dairies, Inc., Mountainview Dairy, Inc., Trandirect Service, Inc., Glen Dor Products, Inc., Miller Automatic Corp., and IRG Management Corp. (collectively, the "Defendants") to operate the Defendants' dairy business, but was eventually terminated. The Plaintiff contends that his termination was without cause and that the Defendants owe him salary and benefits. While a majority of the Plaintiff's claims are state law claims, his assertion of federal jurisdiction is predicated on two things: (1) a COBRA claim for benefits; and (2) diversity of citizenship. The Defendants moved to dismiss (the "Defendants' Motion")[2] for an absence of federal jurisdiction (other than the COBRA claim) on the basis of a lack of diversity of citizenship.

The parties do not dispute that all of the Defendants, Mr. Wohl and the corporations that he owns and/or controls, are domiciled in New York. The issue addressed at the Hearing was whether the Plaintiff was a domiciliary of New York or Connecticut. If the Plaintiff is determined to be a New York domiciliary, diversity of jurisdiction does not exist and the Defendants' Motion should be granted for lack of subject matter jurisdiction. To the contrary, if the Plaintiff is deemed to be a Connecticut domiciliary, diversity jurisdiction does exist and the Defendants' Motion should be denied.

In conjunction with the Hearing, the parties submitted a Joint Statement of Undisputed Facts and Stipulations (the "Joint Statement"), whereby certain facts were stipulated to, including without limitation the following: (1) in September 1998 the Plaintiff changed his domicile from Connecticut to New York (Joint Statement, ¶ 7); (2) the Plaintiff worked for the Defendants from 1998 until January 10, 2003 (*Id.* at ¶ 9); (3) as of April 22, 2003, the date of the commencement of this action, (a) the Plaintiff owned a home in South Fallsburg, New York, (b) the Plaintiff had a residence in Connecticut, a room in his brother's house for which he paid no rent, and (c) the Plaintiff's girlfriend was living in the South Fallsburg house. (*Id.* at ¶ 10); (4) the Plaintiff slept in the South

---

1. The Plaintiff has also asserted a COBRA claim; however, the Defendants have paid the premiums for such coverage following the Plaintiff's termination, which the Plaintiff has used to obtain medical benefits. Joint Statement (defined below), ¶ 14.

2. On or about August 27, 2003, United States District Judge Gerald E. Lynch denied the Defendants' Motion (see copy of transcript of August 27, 2003 conference) without prejudice to renew at a later date. This case was reassigned to this Court on or about September 26, 2003. As set forth in Footnote # 1 above, the Defendants have paid for the Plaintiff's COBRA benefits; thus this Court must revisit the diversity jurisdiction issue at this time.

Fallsburg house most of the time between January 10, 2003 and July 4, 2003 (*Id.* at ¶ 11); (5) as of the filing of the lawsuit, the Plaintiff had advertised the South Fallsburg house for sale in a local newspaper and on the internet (*Id.* at ¶ 12); and (6) in February 2003, the Plaintiff "re-registered" to vote in Connecticut[3] from his brother's address in Ellington, Connecticut (*Id.* at ¶ 13). Following the completion of the Hearing, the parties requested, and were allowed, the opportunity to submit written closing arguments on the diversity question (respectively, the "Plaintiff's Supplement" and the "Defendants' Supplement").

## II. *ANALYSIS:*

### A. BURDEN OF PROOF:

■ Hornbook law provides that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction. 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3522, at 62–65 (2d ed.1984); 15 J. MOORE, MOORE'S FEDERAL PRACTICE § 102.14, at 102–24 (3d ed. 1998) ("The burden of proving all jurisdictional facts is on the party asserting jurisdiction."); *see also Scelsa v. City University of New York,* 76 F.3d 37, 40 (2d Cir.1996). In order to satisfy its burden, the party must allege "a proper basis for jurisdiction in his pleadings and must support those allegations with 'competent proof' if a party opposing jurisdiction properly challenges those allegations[.]" *Linardos v. Fortuna,* 157 F.3d 945, 947 (2d Cir.1998); *see also McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The existence of diversity jurisdic-

tion must be established by the clear and convincing evidence standard. *Palazzo v. Corio,* 232 F.3d 38, 42 (2d Cir.2000).

In the case at bar, the Plaintiff is the party invoking federal jurisdiction; therefore, the evidentiary burden is on the Plaintiff to establish the existence of federal jurisdiction through a showing, by clear and convincing evidence, that the Plaintiff and Defendant have diverse citizenship—namely, that the Plaintiff was a Connecticut domiciliary.

### B. RELEVANT TIME OF INQUIRY:

■ It is also hornbook law that the question of "whether federal diversity jurisdiction exists is determined by examining the citizenship of the parties *at the time the action is commenced* …If diversity exists at the time of commencement, federal jurisdiction is not defeated if one party subsequently becomes a citizen of the same state as his opponent." 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3608, at 448–49 (2d ed.1984) (emphasis added); *see* 15 J. Moore, MOORE'S FEDERAL PRACTICE § 102.32, at 102–61–62 (3d ed.1998); *see also Freeport–McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) ("if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events"); *Matimak Trading Co. v. Khalily,* 118 F.3d 76, 79 (2d Cir.1997), *cert. denied,* 522 U.S. 1091, 118 S.Ct. 883, 139 L.Ed.2d 871 (1998). Accordingly, this Court's inquiry must focus on the Plaintiff's domicile as of April 22, 2003, the date

---

**3.** Prior to changing his domicile to New York in 1998, the Plaintiff had been registered to vote in Manchester, Connecticut. In 1998 he registered to vote in Sullivan County, New York. As of the date of the commencement of this action, none of the voter registrations had been cancelled. (Joint Statement at ¶ 13).

of the filing of the lawsuit.[4]

### C. DOMICILE:

The determination of a party's citizenship for purposes of the diversity statute, 28 U.S.C. § 1332, is a mixed question of fact and law. *Palazzo,* 232 F.3d at 41–42. An individual's citizenship, within the meaning of the diversity statute, is determined by his or her domicile. *See e.g. Linardos,* 157 F.3d at 948. A person's "domicile" is defined to be "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos* at 948 (internal quotation marks omitted). At any given time, a person can only have one domicile. *See e.g. Rosario v. INS,* 962 F.2d 220, 224 (2d Cir.1992). When, as in the case at bar, a party contends that it has changed its domicile, and that contention has been challenged by the opposing party, there is a presumption of continuing domicile that must be overcome. *Herrick, Inc. v. SCS Communications, Inc.,* 251 F.3d 315, 323–24 (2d Cir.2001); *see also Bank One, Texas N.A. v. Montle,* 964 F.2d 48, 50 (1st Cir.1992).

In order to change one's domicile, two elements must be satisfied. First, the individual must establish a residence in the new domicile. *Palazzo* at 42. Second, the individual must express an intention to remain at that new residence. *Id.* Both elements must be established; one without the other is insufficient to change a person's domicile. The questions of a person's intent to change and then to remain are factual questions. *Katz v. Goodyear Tire & Rubber Co.,* 737 F.2d 238, 244 (2d Cir.1984). Even though the questions of intention to change and then to remain are factual questions, which affect the determination of federal jurisdiction, such questions need not be submitted to a jury and may be resolved by the district court. *Palazzo* at 42; *see also Katz* at 242 n. 2 ("In analyzing the propriety of a court['s] deciding a factual issue on a pretrial motion, we distinguish between jurisdictional and non-jurisdictional issues. The question of jurisdiction need not be submitted to a jury.").

Based on the foregoing case law, in the current case, the Plaintiff must show that: (1) he established a new residence in Connecticut; and (2) he intended to re-establish a Connecticut domicile and to remain in that domicile. With respect to the first element, prior to the Hearing the parties stipulated that as of April 22, 2003, the Plaintiff had two residences, the house in South Fallsburg, New York and the room in his brother's house in Ellington, Connecticut. (Joint Statement, ¶ 10).[5] Thus, the critical issue in this Court's analysis becomes the Plaintiff's intent, did he

---

4. There is no dispute that after the filing of the lawsuit the Plaintiff sold his New York house, terminated all ties to New York and resided, and continues to reside, full-time in Connecticut. However, as emphasized above, the time of significance is the date of the filing of the lawsuit, not subsequent actions.

5. Despite stipulating to the fact that the Plaintiff had a residence at his brother's house in Ellington, Connecticut, the Defendants challenge the legitimacy of that residence because the Plaintiff did not own property or pay any rent. (Defendants' Supplement, 4–5). In re-sponse, the Plaintiff indicates that he was unable to afford to buy or rent in Connecticut because he was paying the mortgage on the New York house, which he was trying to sell. (Plaintiff's Supplement, 5–6). The Plaintiff states that because he could not afford a second housing payment, he took advantage of his brother's generosity and temporarily resided with him. (*Id.*) Further, the Plaintiff argues that his financial crisis, which forced the above situation, was brought on by the Defendants' allegedly wrongful conduct. (*Id.*)

intend to change his domicile from New York to Connecticut.

The uncontroverted testimony and exhibits produced at the Hearing, as well as the facts stipulated to pursuant to the Joint Statement, establish, by clear and convincing evidence, that prior to the filing of this lawsuit, the following events had transpired:

(1) the Plaintiff's employment contract with the Defendants contained a non-compete agreement whereby he agreed not to work for any competitor of the Defendants within ninety (90) miles of the Defendants' location for a period of three years (Transcript of the March 23, 2004 Hearing (the "Transcript"), 16–18; Plaintiff's Exhibit 3 (the "Non–Compete Agreement"), ¶ 8); [6]

(2) in January or February 2003 the Plaintiff established a residence in Connecticut at his brother's house at 80 Cider Mill Road, Ellington, Connecticut (Transcript at 19; Joint Statement, ¶ 10);

(3) in January or February 2003 the Plaintiff established an office in Connecticut at his brother's office at 310 Hartford Turnpike, Vernon, Connecticut. The Plaintiff used this address on his resume, business cards [7] and billing invoices dated April 2 and 14, 2003 [8] (Transcript at 26–27; Plaintiff's Exhibit 10);

(4) on or about January 27, 2003, the Plaintiff opened a "WebsterOne Relationship Checking Account" and a "Premium Money Market Savings Account" with Webster Bank in Connecticut (Transcript at 25; Plaintiff's Exhibit 8);

(5) in February 2003 the Plaintiff placed advertisements to sell his South Fallsburg home in a local newspaper and on the internet [9] (Transcript at 32–33; Plaintiff's Exhibit 12 (newspaper advertisement); Joint Statement, ¶ 12);

(6) on or about February 20 and 21, 2003, the Plaintiff (a) registered his two cars in Connecticut, (b) changed his car insurance to reflect his brother's Connecticut address, (c) obtained a Connecticut driver's license; and (d) surrendered his New York license plates and received a refund (Transcript at 19; Plaintiff's Exhibit 5);

(7) on or about March 4, 2003, the Plaintiff registered to vote with the Registrar of Voters in Ellington, Connecticut (Transcript at 23; Plaintiff's Exhibit 7; Joint Statement, ¶ 13);

(8) on or before March 7, 2003, the Plaintiff arranged to be listed in the Connecticut telephone book and add-

---

**6.** The relevant portion of the Non–Compete Agreement was entered into evidence as "Plaintiff's Exhibit 3" during the Hearing. A complete copy of the Non–Compete Agreement is attached to the Plaintiff's complaint as "Exhibit A." Unless otherwise noted, references herein to "Plaintiff's Exhibit" shall refer to documents admitted into evidence during the Hearing.

**7.** With respect to the business cards and resume, this court is unable to independently confirm the dates that they were printed and used; however, the Court credits the Plaintiff's testimony on this subject and finds it credible.

**8.** The Plaintiff testified that he was working as a consultant during this time period, including work for Wade's Dairy. (Transcript at 27; Plaintiff's Exhibit 10).

**9.** The Plaintiff ultimately enlisted the services of a real estate agent and closed the sale of the South Fallsburg house on or about November 12, 2003.

ed his name to his brother's telephone bill (Transcript at 19–20; Plaintiff's Exhibit 4); and

(9) on or about March 26, 2003, the Plaintiff signed a confidentiality agreement with Wade's Dairy, which is located in Bridgeport, Connecticut, in connection with the negotiation of a partnership agreement whereby the Plaintiff would become a partner in that business [10] (Transcript at 30; Plaintiff's Exhibit 11).

The evidence produced at the Hearing, including without limitation the foregoing actions, which all occurred prior to the filing of the instant lawsuit, demonstrate the Plaintiff's unambiguous intent to (a) change his domicile from New York back to Connecticut and (b) be domiciled in Connecticut with an intention to remain there indefinitely. Thus, this Court finds that the Plaintiff has sustained his burden of establishing, by clear and convincing evidence, that he was a Connecticut domiciliary on April 22, 2003. Accordingly, diversity of citizenship existed between the Plaintiff and the Defendants as of the filing of the lawsuit and the Defendants' Motion is denied.

### III. *CONCLUSION:*

For all of the reasons set forth above, the Defendants' Motion to Dismiss is denied.

It is so ordered.

---

[10] Although the Plaintiff ultimately joined Wade's Dairy as a partner, where he continues to work, that fact is not relevant to this Court's analysis except to the extent his signing of the confidentiality agreement in March 2003 reflects an intent to remain in Connecticut.